# Bemis v. Insurance Company.

*Evidence—Insurance—Provision in policy touching change of interest—
Inoperative conveyance.*

Where what purports to be an absolute conveyance and reconveyance is proven conclusively to be in fact no change or intended change, as between the parties, of any possession, interest or title, there is no violation of an insurance policy or a clause thereof providing that said policy shall be void if any change, other than by death of an insured, take place in the interest, title or possession of the subject of insurance, whether by legal process or by voluntary act of the party.

Argued May 22, 1900. Appeal, No. 165, April T., 1900, by defendant, in suit of E. L. Bemis, against the Harborcreek Mutual Fire Insurance Company, of Erie, Pennsylvania, from judgment of C. P. Erie Co., Sept. T., 1897, No. 68, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by W. W. PORTER, J. RICE, P. J., and W. D. PORTER, J., dissent.

Assumpsit.   Before WALLING, P. J.

It appears from the record and the evidence that the action was brought against defendant, a mutual insurance company, to recover for loss on a dwelling house and furniture.

The policy was of the form known as the "Standard Fire Insurance Policy of the States of New York and Pennsylvania," prescribed by the insurance department, and contained the following condition, viz:

"This entire policy, unless otherwise provided by agreement indorsed hereon, or added hereto, shall be void . . . . if any change, other than by the death of an insured, take place in the interest, title, or possession, of the subject of the insurance (except change of occupants, without increase of hazard), whether by legal process, or judgment, or by voluntary act of the insured, or otherwise."

On September 16, 1896, by general warranty deed, Edwin L. Bemis, the plaintiff, with his wife, conveyed the insured premises to John Morse, the deed being recorded in the office of the recorder of deeds, in and for the county, January 13, 1897, in deed book, No. 120, page 539.   The consideration named in the deed was $4,000.

On February 20, 1897, by deed of general warranty, recorded April 27, 1897, in deed book, No. 122, page 144, John Morse and wife reconveyed the insured premises to Edwin L. Bemis, the plaintiff.   The consideration named in the deed was $4,000.

It was testified that no consideration passed for either conveyance.

No consent or agreement of the company to either conveyance was indorsed upon or added to the policy, as provided in the portion of the policy above quoted.   Nor did the company, or any of its officers or agents, have any knowledge or notice of either conveyance until after the building insured was destroyed by fire.

On April 3, 1897, the building insured was totally destroyed by fire, with a portion of the furniture contained in it.

There having been no change in the interest, title or possession of the furniture contained in the building, the loss on it was paid June 1, 1897.

The company refused to pay the loss upon the building, upon

the ground that the conveyance of it by the plaintiff was a violation of the condition of the policy quoted above.

No other objection was made by the company.

The court submitted the following points:

[That the conveyance by plaintiff and wife, dated September 16, 1896, to John Morse, and recorded in Erie county deed book, No. 120, p. 539, was a violation of the clause in the policy, which reads as follows: " This entire policy unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured, or otherwise," and therefore rendered the policy void. *Answer:* Under the evidence in this case I decline to affirm that point.] [1]

[The subsequent conveyance by John Morse and wife to Edwin L. Bemis dated February 20, 1897, and recorded April 27, 1897, twenty-four days after the loss by fire occurred, did not reinstate the policy which had been made void by the deed from E. L. Bemis and wife to John Morse. *Answer:* The second point assumes that the deed from Bemis to Morse rendered void the policy of insurance. For that reason, under the evidence in this case, I decline to affirm it.] [2]

[Under all the evidence the verdict should be for the defendant. *Answer:* The third point is declined.] [3]

The court charged the jury in part as follows:

[Now, in view of these authorities, and many others, some of which are referred to in the case above recited, of Burkhart against the Insurance Company, it seems to me that if there was simply a nominal transfer, Mr. Bemis all of the time remaining the sole owner of the property, that it did not avoid the policy. If you are satisfied of the truth of the evidence (which is not contradicted), you should find a verdict for the plaintiff, for the amount of the policy, for the amount of the insurance on the dwelling house, $1,000, with interest from the time when it should have been paid, making in all, at this date, the amount of $1,154.40.] [4]

Verdict and judgment for plaintiff for $1,154.50. Defendant appealed,

*Errors assigned* were (1–3) in answers to defendant's points, reciting points and answers. (4) To a portion of the judge's charge, reciting same. (5) In submitting the case to the jury.

*Frank Gunnison,* for appellant.—The learned court below attached much importance to the decision of this court in Burkhart v. Insurance Co., 11 Pa. Superior Ct. 280, and treated it as conclusive authority in this case for granting a new trial after instructing the jury to find for the defendant on the first trial, upon being referred to it.

It seems to me that the learned judge extended that application of that authority far beyond what the circumstances of the case and the language of the opinion justified, and that, so far from sustaining his decision, it, by implication, at least, is an authority sustaining the position of the appellant: Foote v. Ins. Co., 119 Mass. 259. See also Edmunds v. Ins. Co., 83 Mass. 311, Ins. Co. v. Riker, 10 Mich. 279, Baldwin v. Phœnix Ins. Co., 60 N. H. 164, Baldwin v. Ins. Co., 60 N. H. 422, and s. c. 49 Am. Repr. 324.

The Supreme Court of this state has gone further than the courts of some of the states in declaring policies void for breach of the conditions forbidding alienation: Finley v. Ins. Co., 30 Pa. 311; Buckley v. Garrett, 47 Pa. 204; Ins. Co. v. Hebard, 95 Pa. 45; Barnes v. Ins. Co., 51 Me. 110.

The case of Farmers' and Merchants' Insurance Company v. Jensen, 56 Neb. 284; 44 L. R. A. 861, is one in which the facts were similar to those in the present case.

In Mulville v. Adams, 19 Fed. Repr. 887, the insured property was conveyed by the insured to his son, and reconveyed three days afterward, and before the fire, to the insured. It was held that no recovery could be had upon the policy.

The defendant cannot be said to have been estopped from making its defense. The payment of the assessment on March 25, 1897, before the fire, received by the defendant in ignorance of the breach of the condition in the policy, cannot be held to constitute an estoppel. It had none of the elements of estoppel. And even if received with knowledge of the facts, the company was not bound to pay it back : Ins. Co. v. Keefer, 9 Pa. Superior Ct. 186; Davison v. Insurance Co., 189 Pa. 132; Ins. Co. v. Underwood, 69 Mass. 210; Ins. Co. v. Prossee, 11 Iowa, 115.

*Geo. H. Higgins*, for appellee.—If any doubt exists as to the meaning of the terms used in the insurance policy, such doubt should be resolved in favor of the insured, rather than in the interest of the underwriter: Western & Atlantic Pipe Line v. Insurance Co., 145 Pa. 346.

The deed in this case being entirely without consideration, executed and delivered under a verbal agreement to reconvey at any time, was without any force or effect whatsoever, and did not even accomplish what the parties were endeavoring to do, that is, cut off the wife's dower in the real estate described in the deed: 1 Scribner on Dower, 401; 2 Scribner on Dower, 313; Boardman v. Dean, 34 Pa. 252.

A mere nominal transfer, the actual interest remaining, is not a breach of the condition: 13 Am. & Eng. Enc. of Law (2d ed.), 241.

Knowing the exact facts and all the surrounding circumstances, the defendant retained the assessment paid by the plaintiff, and acknowledged the validity of the policy by paying the loss on personal property, and in so doing the defendant ratified and approved the act of the plaintiff: Gibson v. R. R. Co., 164 Pa. 142.

OPINION BY WILLIAM W. PORTER, J., July 26, 1900:

The policy upon which suit is brought covered, inter alia, the buildings on a farm and certain personal property. The buildings and part of the personalty were destroyed by fire. The loss on the personal property was paid by the defendant. Payment for the loss on the buildings was refused. The facts are, that on September 16, 1896, the plaintiff and his wife executed and delivered a deed of the farm to one Morse, a brother-in-law of the plaintiff. The making of the deed was inspired by some domestic trouble of the plaintiff. The purpose was to bar the dower of his wife. After a time, he and his wife becoming reconciled, Morse executed a deed conveying the property back to the plaintiff, on February 20, 1897. The fire occurred April 3, 1897.

The transaction, above described, is said to work a nullification of the contract of insurance under this clause of the policy: " This entire policy, unless otherwise provided by an agreement indorsed hereon, or added hereto, shall be void if any

change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured, or otherwise." The question is, was the conveyance by the insured and his wife to Morse a change of "interest, title or possession of the subject of insurance?"

It is not alleged that there was any change in the possession of the property insured. The plaintiff remained in occupancy until the time of the fire. It is argued, however, that the transaction between the plaintiff and Morse was a change in the "interest" and "title" of the insured.

The form of the clause under discussion has been the result of growth and development. The stipulation has ever been, in purpose, a prohibition of alienation of the property by the insured without the assent of the insurer. The trend of the decisions has been to apply the clause, in its earlier forms, to cases of absolute alienation. Partial loss of ownership, an insurable interest remaining, did not result in loss of insurance. More recently the clause has been expressed as in the policy before us, by introducing the words, "change of" interest or title. The language is evidently intended to widen the scope of the restriction. Whether it be broad enough to cover the present case is to be determined.

If there be any doubts as to the application of the clause, the doubts, under general canons of construction, are to be resolved in favor of the insured: Pipe Lines v. Insurance Co., 145 Pa. 346, 358. Contracts of insurance should be liberally construed in aid of the indemnity which was contemplated by the parties: Machine Co. v. Insurance Co., 173 Pa. 53. Before proceeding to inquire more minutely of the meaning of the words "interest" and "title," it may be said generally that they are not to be applied in too technical a sense. Authority for this statement is found in Yost v. Insurance Co., 179 Pa. 381. There, the policy required the interest of the assured to be "unconditional and sole ownership." The Supreme Court held that such a condition must be understood, not in a technical sense, but as requiring the insured to be the "actual and substantial owner." See also Chandler v. Insurance Co., 88 Pa. 223, and Insurance Co. v. Wilgus, 88 Pa. 107.

The word "interest" in the clause before us may refer to the relation of the insured to the thing insured as distinguished from the ownership by the former. It may be that the phrase covers a change in the interest of the holder of an incumbrance. It may be that it refers to an insured whose "interest" does not extend to the whole property insured; or to one whose "interest" is contingent, remote or defeasible. Regarding the clause, however, as including a change in any interest in the thing insured, it is impossible to make application of it to the case before us. The conveyance by the insured to Morse passed no interest to the latter. All of the interest, which was absolute ownership, remained in the insured. The property was as much his after, as it was before, the making of the deed. While a deed in form, it, in substance, as between the parties, differed in nothing from a power of attorney to convey upon the request of the grantor. The reconveyance by Morse to the plaintiff operated as a revocation of the power. It certainly passed no interest. There was, therefore, no change of interest by the transaction within a fair construction of the language of the clause.

It is strongly urged, however, that there was a change of "title." There undoubtedly was a recorded conveyance by the insured to Morse. A deed to an innocent purchaser by Morse would have estopped any claim of title by the insured. But the rights of third parties are not for determination here. They are governed by principles not involved in this discussion. The grantee had power to convey away the title of the grantor. This, if done in violation of the agreement proven in the case, would have been an act of fraud. The position of Morse was, as between the original parties, simply that of a vehicle for the passage of title, should it become necessary to convey. As between the two parties he held no more "title" than if he had been given a deed signed and acknowledged with the name of the grantee omitted, but to be filled in and delivered in accordance with the instructions of the grantor. If it be said that Morse had power to make a good deed to a stranger, it may be answered, that the grantor of a power loses nothing of his title until the execution of the power. Here, there was no execution of the power, but a surrender of it before the loss covered by the insurance in dispute. "Title," by the old definitions, was said to be the means whereby a man holdeth land. It means, as

modern attempts at definition have shown, much more than this. We need here, however, no technical definition. " Title," in its accepted daily untechnical use, means "ownership." The deed held by Morse was not " title." It was evidence of title. It was in form a muniment of title. But between the original parties it conveyed no more than it was intended to convey, which was nothing. Not one tittle of interest passed; not one vestige of actual ownership vested.

It will have been seen that the conveyance by the insured to Morse, and the reconveyance by Morse to the insured, have been regarded only in their intention and effect as between the parties themselves. This we have done on the authority of Burkhart v. Insurance Co., 11 Pa. Superior Ct. 280. In that case the language of the clause differed from the one now before us. The effect of that decision was to hold that, notwithstanding the provisions of the act of 1881 required the defeasance accompanying an absolute deed to be in writing, it was possible for the insured to prove, in a suit against the insurance company on a subsequent loss by fire, that the transaction was but a pledge of the land for debt, and, therefore, not an alienation. Here what purports to be an absolute conveyance and reconveyance, is proven conclusively to be in fact no change or intended change, as between the parties, of any possession, interest or title.

If it be said that the first deed was a conveyance in trust and that the trust, not being in writing, the deed was absolute, we have but to refer to Burkhart v. Insurance Co., supra, again, wherein Judge BEEBER uses this language, which he justifies by citation : " The language of the act of June 8, 1881, is no more general than is that of the statute of frauds and perjuries of March 21, 1772, 1 Sm. L. 389, sec. 1, nor than that of the Act of April 22, 1856, P. L. 532, sec. 4, requiring deeds of trust of land to be in writing. These acts of assembly were passed to prevent the compulsory transfer of title to real estate for breach of contracts unless such contracts were evidenced by writings. The courts have persistently refused to apply these acts for the benefit of persons not parties to the parol contract, or privies thereto."

There has been no violation of the policy under the clause quoted. There can be no hardship in enforcing a contract in ac-

cordance with the generally accepted meaning of the terms in which it is expressed. There is quite an apparent hardship in depriving one of his idemnity, who has continued to perform his obligation in the payment of assessments, on the ground that he has done an act empty in form, innocent in intention and barren of injury to the insurer.

The judgment is affirmed.

RICE, P. J., and W. D. PORTER, J., dissent.