Berenato et al., Appellants, *v.* Gazzara et al.

Argued January 6, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Louis Silverman,* with him *Charles P. Mirarchi,* for appellants.

*James R. Wilson,* with him *William F. Zinger* and *William J. Wilson,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, March 22, 1943:

This was an action in equity to set aside an alleged fraudulent conveyance of real estate.

The material averments of the bill are as follows: that in an action of assumpsit started July 3, 1939, Angelo Berenato and Raymond Berenato, coal dealers trading as A. Berenato & Son, recovered a judgment against Rosario Gazzara for coal sold and delivered in the sum of $3,980.61; that on October 10, 1934, Rosario Gazzara became owner of premises 2333 South 16th Street, Philadelphia; that on June 13, 1938, Rosario Gazzara and Grazia, his wife, conveyed the property to Guiseppe Gazzara and Concetta, his wife; and that the conveyance to Guiseppe Gazzara and Concetta Gazzara was without consideration and made by Rosario Gazzara, while insolvent, for the purpose of hindering, delaying and defrauding creditors. The prayer of the bill asked that the conveyance be declared fraudulent as to the Berenatos, or that a lien be entered against the property in the amount of their judgment, and for an injunction. Answers were filed averring that Guiseppe Gazzara purchased the property, with his own money, on June 9, 1927, and held the record title until October 10, 1934,

the date of the deed to Rosario Gazzara; that the conveyance to Rosario Gazzara was without consideration and subject to an express promise to reconvey to Guiseppe Gazzara on demand; that Guiseppe Gazzara continued in possession of the property during the period record title was in Rosario Gazzara, paying mortgage principal and interest and all carrying charges, including taxes and water rents; and that the reconveyance to Guiseppe Gazzara and Concetta, his wife, on June 13, 1938, was strictly in accordance with the oral understanding that Rosario Gazzara would do so on demand. The answers denied that the purpose of the conveyance was to hinder, delay or defraud creditors and asked that the bill be dismissed.

The court below found the facts as averred in the answers and entered a decree dismissing the bill. Specifically, the court found: "6. This conveyance [the conveyance of October 10, 1934] was made without consideration and upon the express, contemporaneous oral agreement and understanding that Rosario Gazzara would hold the legal title for Guiseppe Gazzara, who would remain the real, equitable and sole owner of the premises, and that Rosario would, upon demand, reconvey the property to Guiseppe or his nominee. *Said conveyance and agreement were made to promote the legitimate personal business interests and convenience of the grantor, and neither intended to be, nor were, in any respect fraudulent.* 7. In pursuance of said agreement and solely to carry out his promise, and without further consideration, Rosario Gazzara and Grazia, his wife, on June 13, 1938, by deed duly recorded . . . reconveyed the property . . . to Guiseppe Gazzara and Concetta, his wife." Our review of the record satisfies us as to the sufficiency of the evidence, both in quality and quantity, to sustain these findings, and it may be assumed that counsel for appellants are likewise so satisfied, for no question as to sufficiency of the proofs is included in the "questions involved" and no such question has been ar-

gued by them in their brief. Hence the sole question is whether, assuming the correctness of the findings, they support the decree entered. Appellants contend they do not—that irrespective of the findings they are entitled to realize their debt out of the property either on the ground of fraudulent conveyance or by estoppel.

Perhaps the law should, in cases of this character, regard the conveyance as much a fraud on the grantor's creditors as where the property was purchased by the grantor with his own funds. The fact is, however, that it does not. Notwithstanding that the cestui que trust has no rights he can enforce by judicial process, yet if his grantee, in recognition of the force of his so-called "moral" obligation, voluntarily returns the property in satisfaction of the oral trust, it is well settled that the latter's creditors have no standing to complain. In *Sackett v. Spencer*, 65 Pa. 89, Sackett, purchaser at a sheriff's sale, brought an action of ejectment against Spencer, grantee of the judgment debtor. Forman, the judgment debtor, had conveyed the land to Spencer ten months before the entry of the judgment and "consequently the plaintiff could recover only upon establishing such a fraud upon creditors as would destroy the deed from Forman to Spencer." Spencer claimed that Forman held the title as trustee only, to which Sackett replied that the trust, not being in writing, was barred by the statute of frauds. Affirming the judgment entered upon a verdict for defendant, this Court said (p. 99): "If Forman held the land on these terms, and conveyed it to Spencer in compliance with the understanding, it is clear there was no fraud on the rights of creditors, whether he had the power to refuse to convey because of the Act of 1856 or not. Having received the title without the payment of any consideration by himself, it was no fraud on the rights of creditors to fulfill the understanding upon which he received the title. His estate had not paid for the land, and nothing had gone into it to which creditors could lay claim . . ." See also

*Flory v. Houck,* 186 Pa. 263, 268; *Kauffman v. Kauffman,* 266 Pa. 270, 275; *Burkhart v. Ins. Co.,* 11 Pa. Superior Ct. 280, 290; *Bemis v. Ins. Co.,* 14 Pa. Superior Ct. 528, 535; *Buchner v. Buchner,* 114 Pa. Superior Ct. 503, 507. This same view has been adopted by the great weight of authority. As aptly said in *Bryant v. Klatt,* 2 Fed. (2d) 167, 168: "The courts seem to have been able to endure the spectacle of a man who in his own interest defrauds a confiding fellow, but to stick at allowing the same privilege to his creditors. Whatever may be thought of the logic of the distinction, it is well settled." See also 1 Glenn, Fraudulent Conveyances and Preferences (Rev. ed.), section 291(b); 24 Am. Jur., Fraudulent Conveyances, section 108; 64 A. L. R. 576.

Are appellants entitled to prevail on the theory of estoppel? If the facts were as they would lead us to believe, i. e., if in point of fact the extensions of credit on which their judgment is based occurred "while [Rosario Gazzara] was the registered owner" of the property and were made by appellants "relying upon his ownership of the said property," the estoppel argument might have some legitimate basis. Even so, it should be noted that according to the apparent weight of authority the mere clothing of the trustee with absolute record ownership is not enough to estop the beneficiary; in addition, the majority view seems to require knowledge by the cestui que trust, or reason to know, that the trustee was obtaining, or was likely to obtain, credit on the faith of his ostensible ownership. "Two things, it is to be observed, must concur. The person who is trustee must be holding himself out as owning the property free of equities. That requirement is obvious. But the beneficiary must also be at fault, by reason of knowing, or having reason to know, that the trustee was guilty of this false ostentation": 1 Glenn, Fraudulent Conveyances and Preferences (Rev. ed.), section 343(b). See also 2 Scott on Trusts, section 313; Restatement of Trusts, section 313(b) comment (c).

These are not the facts, however, as the record conclusively demonstrates. No part of the indebtedness on which appellants' judgment is based was incurred while record title to the property stood in the name of Rosario Gazzara; on the contrary, as found by the court below and as shown by the statement of claim filed by appellants in the assumpsit action, the judgment is for goods sold and delivered from September 7, 1938, to April 21, 1939, three to ten months after the reconveyance and two to nine months after the deed of reconveyance was recorded. Although the credit dealings between the parties cover a period of seventeen years, the undisputed documentary evidence shows that of the indebtedness accruing prior to September 7, 1938, including that incurred during the period record title was in Rosario Gazzara, the only item unpaid on that date consisted of a single charge in the amount of $20, carried on appellants' books as follows: "Jan. 1931, 1 delivery slip, 2 tons missing." Thus appellants could not have been misled by the record title, as they contend, since it contained nothing to mislead them; and hence the principle of estoppel or reputed ownership is not available. See 1 Glenn, Fraudulent Conveyances and Preferences (Rev. ed.), section 370.

In *South Side Trust Co. v. Fitzharris*, 239 Pa. 205, cited to us as controlling by appellants, the situation was very different. There a husband, on the eve of bankruptcy, attempted to reconvey to his wife property held in his name for a period of seven years; all the credit was extended "during that time"; and it was the husband's apparent ownership of the property "which *during these years* enabled him to obtain loans" from a bank and others. Moreover the findings of the court below in that case, as shown by the original record, established that the very purpose of the arrangement was to enable the husband to obtain credit. *On these facts*, this Court held the wife was estopped, saying (p. 207): "By conveying the real estate to her husband, Mrs. Fitz-

harris put it in his power to obtain credit on the faith of his ownership and she cannot now deny that the ownership was in him as against the creditors who loaned their money by reason of the confidence invited by her act."

Decree affirmed at the cost of appellants.