## Sill *versus* Swackhammer.

1. A judgment creditor is not entitled. to the protection of a purchaser of the legal title, against an equitable owner or his creditors.

2. Where property is conveyed by A. to B. by deeds absolute on their face, but a trust is reserved by parol in favor of C.,—a judgment creditor of B., who afterwards buys the property at sheriff's sale under his judgment, will be bound by express notice of C.'s equitable title, given at any time before the sheriff's sale.

3. Under the circumstances of this case it was held, that the possession of the cestui que trust, a married woman, with her husband was constructive notice to the judgment creditor of her title.

4. As a rule, only such creditors as are intended to be defrauded, can impeach a conveyance made in fraud of their rights, and the conveyance is good as between the parties. But where the grantee is a trustee, upon a valid trust, he has no title which can pass to a purchaser from him, as against the cestui que trust, if the purchaser have either actual or constructive notice of the trust.

March 13th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J., absent.

ERROR to the court of Common Pleas of *Bradford county:* Of January Term 1882, No. 377.

This was an action of ejectment by John Swackhammer against Charles Sill and Mary Sill his wife, for two pieces of land, adjoining each other, situate in Herrick township, Bradford county, one containing about 24 acres and the other 11 acres.

On the trial, before MORROW, P. J., the plaintiff's evidence tended to show that Charles Sill, one of the defendants, in 1864, purchased, by contract, the land in suit from I. N. Coe and Burton Kingsbury, and paid at least part of the purchase money before the delivery of the deeds, it being claimed that Philip Swackhammer paid the other part. In the meantime, Sill, being largely indebted, became insolvent, and in 1869 and 1871 caused deeds for the said lands to be made to Philip Swackhammer, his brother-in-law, said deeds being absolute on their face, and for a valuable consideration, and recorded January 18th 1873.

That on July 14th 1873, Philip Swackhammer borrowed from John L. Johnson the sum of $800, representing to him that he had a deed for and owned the land now in question, upon which said Sill then resided. He also induced his brother John to sign a note therefor as security, representing to him that he was the owner of said land, that he had bought it of Sill, and paid for it.

Johnson caused judgment to be entered upon said note to

[Sill *v.* Swackhammer.]

September term 1873, and Philip failing to pay said judgment John paid it, and in January 1878, was subrogated to the rights of the plaintiff.

John caused execution to be issued on said judgment, had said land levied upon and sold, and became the purchaser thereof, and received his deed from the sheriff therefor.

Before the sale of said land, the said Sill presented to the court an affidavit, asking said court to enjoin the sheriff from selling the land in question until other lands of the defendant in said judgment, situate in the county of Susquehanna, were sold, for the reason that he had leased said lands of Philip Swackhammer, May 15th 1871, for 25 years, which lease he still held, and that since the judgment was entered, to wit, Nov. 7th 1877, Philip Swackhammer had conveyed to Mary Sill, wife of said Charles Sill, the said land for $300, the deed never having been recorded.

The plaintiff further alleged that prior to the time of said sale, Sill and Philip Swackhammer frequently represented to him (the plaintiff) and others, that Philip was owner of the premises and that he, Sill, held it by a lease for a term of years ; also that at the sale of the land by the sheriff no notice was given of Mary Sill's claim to it, and that the plaintiff never had any knowledge of such claim until the trial.

The defendants on the other hand claimed that Sill bought the land himself, paying the entire consideration money, and had it conveyed to Philip Swackhammer, with his consent, to be held in trust by said Philip, for Mary Sill, who was Philip's sister, the land being intended by Sill as a payment to his wife of an indebtedness due her by him ; and that the deeds were made to Philip in pursuance of this arrangement although the trust was not mentioned therein. That on Nov. 7th 1877, Philip executed a deed for the land to Mary Sill, receiving no consideration therefor, the deed being in accordance with the trust.

The defendants introduced evidence to the effect that Charles Sill was indebted to Mary Sill at the date of these deeds to Philip, in quite a large sum, which arose as follows : In 1842 Mary Swackhammer (afterwards Mrs. Sill), began working for Charles Sill at ten shillings per week, and continued for two or three years at that price, when the price was raised to twelve shillings per week. She continued in his employ until May, 1854, when she married Charles Sill. In the fall of 1853 Charles Sill made a settlement with Mary Swackhammer and owed her over five hundred dollars. This indebtedness was never paid until the making of the two deeds to Philip Swackhammer, to be held by him in trust for her.

It was further claimed by the defendants, who lived upon

the premises in question, that the plaintiff who was also a brother of Mary Sill, and frequently visited her, had actual knowledge of the possession of the land by her for over thirty years, and that Philip Swackhammer had never been in possession thereof; also that Charles Sill gave the plaintiff notice, before the sheriff's sale, that the land belonged to his wife.

[The testimony is referred to at length in the opinion of this court.]

The plaintiff submitted the following point:

" That if John Swackhammer was a bona fide purchaser of the lands in dispute at sheriff's sale, without direct, express and positive notice of the alleged trust, he takes the land discharged of said trust, and the possession of the cestui que trust, and the exercise of any act of ownership is not such notice."

Answer. " If John Swackhammer purchased the land at sheriff's sale without notice of alleged trust, he took it discharged of such trust. The possession of Mrs. Sill and her husband and acts of ownership were not sufficient to charge him with notice of the claim of Mrs. Sill." (6th assignment of error.)

The defendants asked the court to charge:

(5) " That if John Swackhammer, prior to the time when the land was struck down to him by the sheriff, had notice of the claim of Mary Sill, he took title subject to her claim."

Answer. " Refused, unless the jury find such notice was prior to the entry of the judgment on the note to Johnson." (9th assignment of error.)

(6) " That the possession of the land under the facts shown by the evidence, in connection with the residence, situation and relationship of the parties, was sufficient to charge John Swackhammer with notice of the claim of Mary Sill." Refused. (10th assignment of error.)

(7) " That if the court is unwilling to charge as matter of law, as stated in the preceding point, it is requested to charge that such possession under the circumstances stated in the point is strong evidence of actual notice that John Swackhammer is charged with such actual notice as he received, and was bound to use reasonable diligence in obtaining knowledge of the state of the title and is held chargeable with such knowledge as he might have gained in the exercise of such diligence." Refused. (11th assignment of error.)

(8) " The rule of law is that possession of land is constructive notice of the right of the party in possession."

Answer. " The deeds to Philip Swackhammer being of record, this point is refused." (12th assignment of error.)

(9) " If the plaintiff had actual or constructive notice of the interest of Mary Sill in the premises in dispute, he cannot

recover, if Philip Swackhammer held the title for her as claimed."

Answer. "If John Swackhammer had actual notice of Mary Sill's interest in the premises, he cannot recover. We refuse to say that constructive notice is sufficient to prevent him from recovering, if by that is meant, he knew she had the possession of the property." (13th assignment of error.)

In the general charge, the court instructed the jury inter alia as follows:

"Now as to the second question in the case, and that is as to John Swackhammer's purchase of the land, we hold that he may recover this land, although it was an absolute and bona fide conveyance to Philip Swackhammer for Mrs. Sill, provided you find that John Swackhammer had no notice of Mrs. Sill's interest in the land, and we refuse to say that the fact that Sill and his wife were in possession, exercising acts of ownership, was such notice as to affect him. The deeds having been made to Philip, and having been recorded, John Swackhammer, to be affected by notice, must have actual notice. Actual notice of what? Actual notice of how Mrs. Sill held the land—what interest she claimed in it. Did he have such notice? Did he know at any time before the judgment was entered on that Johnson debt—did he have notice that Philip Swackhammer held the land for Mrs. Sill's benefit? If not, and he purchased in good faith, and by Philip's declarations and statements he was induced to sign that note as surety for Philip, then we think he may recover in this case as the purchaser of the property as Philip's under the sheriff's sale. If he had actual notice that Philip held the land in trust for Mrs. Sill before the judgment was entered on the Johnson note, and afterwards went on and sold it, and bid the lands off, then he would be affected by that notice and could not recover in the case." (4th assignment of error.)

Verdict and judgment for plaintiffs, whereupon the defendants took this writ of error assigning for error the answers to points, as above noted, and that part of the charge of the court above quoted.

*Williams & Angle,* and *Overton & Sanderson,* for plaintiffs in error.—Charles Sill paid for the land and had it conveyed to Philip Swackhammer under a parol trust in favor of Mary Sill. Even if Charles Sill was insolvent at the time, the contract by which Philip acquired title was good as against every one except Sill's creditors. John Swackhammer was not such a creditor. The undisturbed, notorious and unequivocal possession of the land, by Mary Sill, was notice, under the circumstances of this case, to John Swackhammer, of her title and

[Sill v. Swackhammer.]

the trust in her favor: Wilkins v. Anderson, 1 Jones 409 ; Reed's. Appeal, 1 Harris 479 ; Hood v. Fahnestock, 1 Barr 474 ; Parke v. Neeley, 9 Norris 59 ; Jamison v. Dimock, 14 Norris 52 ; Hottenstein v. Lerch, Legal Int. Oct. 27th 1882.    Notice to John Swackhammer of Mary Sill's claim, given at any time before the sheriff's sale, was in time: Barnes v. McClinton, 3 P. & W. 67 ; Weeks v. Haas, 3. W. &. S. 520 ; Cudbury v. Duval, 5 Clark 206 ; Moyer v. Schick, 3 Barr 248 ; Reed's Appeal, 1 Har. 476 ; Rodgers v. Gibson, 4 Yeats 111 ; Morris v. Ziegler 21 P. F. S. 450 ; Brightley's Equity, Sec. 492.

*Madill & Califf*, for defendant in error.—A deed intended to defraud creditors, although void as against them, is valid as against the grantor and those for whose benefit it is designed. The beneficiaries are considered volunteers, and the grantee holds the land discharged from secret trusts.    A trust cannot be enforced when it is designed to effect a fraud on creditors : Carroll v. Boston Marine Insurance Co., 8 Mass. Rep. 517 ; The Dadmun M. Co. v. The Worcester Fire Insurance Co., 11 Met. 429 ; Ellington v. Curre, 5 Ired. Eq. 21 ; Church's Lessee v. Church, 4 Yeates 280 ; Worrall's Accounts, 5 W. & S. 111–113 ; Murphy v. Hubert, 4 Harris 50 ; Zerbe v. Miller, 4 Harris 488. As to the question of notice of the trust, the case of Wilkins v. Anderson, supra, relied upon by the plaintiffs in error, is not in point. That was a question between an unmarried woman in possession, and her cestui que trust.    While here, the husband and wife together occupied the premises, and therefore no presumption of the wife's title arose, but rather a presumption of title in the husband : Curry v. Bott, 3 P. F. S. 400.    There was no error in the ruling of the court below in regard to the time of the notice.    To affect John Swackhammer, the notice of Mary Sill's claim of title must have come to him at the time of signing the note, or at least before judgment was entered thereon : Snyder v. Christ, supra ; Britton's Appeal, 9 Wright 172 ; Lahr's Appeal, 9 Norris 507.

Mr. Justice GREEN delivered the opinion of the court, May 25th 1883.

John Swackhammer was a judgment creditor of Philip Swackhammer.    The legal title to the land in controversy was in Philip at the time, and before John's judgment was entered. John, therefore, had the rights of a judgment creditor of Philip, but that was all ; he had not the right of a purchaser of the legal title against the equitable owner, and was certainly bound by express notice of the equitable title, given at any time before his own title was acquired.    This has been very often ruled.    In Reed's Appeal, 1 Harris 475, GIBSON, C. J.,

[Sill *v.* Swackhammer.]

said : " If anything is settled by reason and authority, it is, that a judgment creditor is not entitled to the protection of a purchaser of the legal title against an equitable owner or his creditors, or to any advantage which his debtor had not." Speaking further of the right of the judgment creditor he said : " When he looks to real security he takes a mortgage, which alone if the title be not plainly an inchoate one, makes him a purchaser of the beneficial ownership, discharged of all secret trusts or frauds whatever." In Moyer *v.* Schick, 3 Barr on p. 248 it was said by the judge of the court below, affirmed by this court, " the recording act declares unrecorded deeds void as to subsequent purchasers and mortgagees, for a valuable consideration. A judgment creditor is neither a purchaser nor a mortgagee. He has no interest or estate in the land. Therefore, if notice was given to the purchaser at the sale, and before his purchase, the unrecorded agreement would not on that account alone be void as to him." Sharswood, J., in delivering the opinion of this court in Morris *v.* Ziegler, 21 P. F. S. on p. 453, quotes and adopts the above citation from Reed's Appeal, and it is the undoubted law of this Commonwealth.

In the present case a parol trust was set up in favor of Mary Sill, and abundant proof was given in support of it. Philip Swackhammer himself testified that he held the title to the land in trust for his sister Mrs. Sill, that he had never paid a dollar of the purchase money, and had no interest in the property. He made a deed to Mrs. Sill for the premises in November 1877. So far therefore as the parties to the transaction were concerned there was no question as to the fact of the trust, and its recognition and complete execution by the trustee. The question of fraud on the part of Charles Sill in making this arrangement in order to cheat his creditors, was left to the jury with proper instructions by the learned court below, as was also the question as to the consideration of the purchase being furnished by the wife. But on the question of notice of the wife's title the court charged that unless such notice was given to John Swackhammer before the entry of the Johnson judgment, he would not be affected by it. In this we think there was error. The authorities are very clear, that notice is sufficient if given at, or at any time before, the sheriff's sale. Thus, in Reed's Appeal, supra, Gibson, C. J., said on p. 479, " Not to insist on that, it is enough that White made the bargain and paid all that was paid ; for it has always been supposed that notice of a resulting trust, or an incumbrance is early enough at the sheriff's sale of the legal title; but if the judgment creditor had the immunity of a purchaser, notice would then be too late to impair the value of his security. A sheriff's vendee with notice buys exactly what the judgment creditor can sell ;

and if he can sell no more than the interest of the debtor, it follows that he stands in the place of the debtor." The cases of Barnes v. McClinton, 3 P. & W. 67, and Ross v. Baker, 22 P. F. S. 186, proceed upon the assumption that notice at the sheriff's sale was sufficient to charge the purchaser. The rule is neither discussed nor questioned but taken for granted in both. As the title which a judgment creditor acquires by a sheriff's sale of his debtor's property, is derived solely from the sale and not from the judgment, a notice which attends or precedes the sale is in time to affect him, and will affect him if in its terms sufficient.

The learned court below was therefore in error in holding that the notice was not effective unless it was given before the Johnson judgment was entered. This ruling requires the reversal of the case on the fourth and ninth assignments. The effect of a notice however depends upon its terms. The purchaser is of course bound by every material fact of which he is directly and distinctly notified. He is also bound by such facts as he would have learned by inquiry if inquiry had become a duty. Now it must be admitted that there is no evidence of any express, direct notice that Mary Sill held title of any kind in the land. A careful examination of all the testimony fails to disclose any such notice. Squires testifies that Charles Sill notified John Swackhammer, before the sale and on the day of sale, that Philip Swackhammer had no interest in the property and that he, John, knew it. Angle says that Charles Sill told John that Philip "hadn't a dollar in the place." Charles Sill was asked: "Q. Did you give Mr. Swackhammer any notice at the time of sheriff's sale about how the title was? A. I did before he sold it; yes, sir, I told him that Philip Swackhammer hadn't a dollar in it, and he knew it; I will notify you of that now, right away, I said; if you meddle with it you will get in trouble before you get through with it; something like of that." Other witnesses testified to conversations with John Swackhammer in which he said he knew that Philip had paid no money for the property, that he knew that Charles Sill owned it, that he believed that Charles Sill's money paid for it, and that he did not believe that Philip had a cent in it. All these conversations were before the sheriff's sale, and one of them was testified to have taken place in November 1873, which was shortly after the Johnson judgment was entered.

In addition to the foregoing it was proved that Charles Sill and his wife had lived on one of the tracts and cultivated both, for many years, that Philip Swackhammer had never occupied either lot in any manner, and that Philip and John Swackhammer were both brothers of Mrs. Sill, and that John lived but 2½ miles distant and occasionally visited Mrs. Sill and her

[Sill *v.* Swackhammer.]

husband at their home. John, being examined, testified as follows.

"It was over 40 years from the first time I knew of their living there. Q. You had frequently been there during those 40 years? A. Yes, sir. Q. You knew that Philip Swackhammer had never lived there? A. Yes, sir. Q. You did not go and ask Mary one word about it? A. No, sir." He also testified that Philip had come to him in 1873 and asked him to become surety for him on the judgment note to Johnson, and was asked, "Q. Up to that time you had supposed it belonged to Charles Sill? A. I suppose so of course. Q. That was the first intimation you had that Charles Sill did not own it? A. The first I ever knew was the time when he came after the money, and I stated as I have stated to you."

It would seem from this testimony that John Swackhammer believed until 1873 that Charles Sill owned the land. We think that in the circumstances developed by the foregoing testimony, John Swackhammer became subject to a duty of inquiry as to the state of the title, and was bound by such facts as would have been discovered by the prosecution of the inquiry. It is true that ordinarily where husband and wife occupy land together by residing on it, the legal presumption is that the possession of the wife is the possession of the husband, but it does not follow that that presumption is to shut out and destroy all other inferences which may be drawn from such possession. In Jamison *v.* Dimock, 14 Norr. 52, where a married woman claimed title by a parol contract of sale, against a subsequent purchaser for value, without notice of her title, Mr. Justice STERRETT said on p. 55, "the admitted possession of the defendants from October 1875, was notice of Mrs. Dimock's equitable title not only to Herdic's vendee, but to the assignees of the mortgage, as well as the purchaser at sheriff's sale. It does not appear that inquiry was made by either of them for the purpose of ascertaining by what right defendants were in possession. It was unquestionably their duty to make such inquiry, and having neglected to do so, they were affected with constructive notice of such facts as would have come to their knowledge in the proper discharge of that duty." In Hottenstein *v.* Lerch, Leg. Int. Oct. 27th 1882, 12 W. N. C. 4, we held a purchaser at sheriff's sale bound by notice of a wife's title, in consequence of her possession, though jointly with her husband, of the land in controversy. It is not a necessary and conclusive inference in all circumstances that when a husband and wife occupy land by joint residence and cultivation, the title can only be in the husband. In this state, since 1848, married women are the owners in their own right of real estate held by them before marriage or acquired by gift or purchase after marriage, and it

[Sill v. Swackhammer.]

is not infrequent that husbands live with their wives upon the land of the latter. In this case Mary Sill held the legal title to the land in controversy by deed dated November 7th 1877, if the testimony is believed, and that was over two months before the plaintiff was subrogated to the rights of the plaintiff in the Johnson judgment, and five months before the sheriff's sale under that judgment. Charles Sill, Mary Sill and Philip Swackhammer all testify to the equitable title of Mary Sill, and it would seem to be a fair inference that if John had made inquiry of them they would have told him the same facts to which they have testified. Certainly a court can not say as matter of law that they would not. John knew that Sill and his wife had lived for many years on the land, and that Philip had never lived there: he believed that Philip had never paid any part of the purchase money, and on the contrary that it had been paid by Sill. In view of all these facts why was it not his duty to make inquiry as to the actual state of the title? We fail to see any sufficient reason. Yet the learned court below excluded all this from the consideration of the jury, and charged that the possession of Sill and his wife, though taken in connection with all the other facts in the case, had no effect to charge Philip with notice of Mrs. Sill's title. In this we think there was error, and that the court should have left to the jury, with proper instructions as to the law of constructive notice, the question whether the facts testified to by the various witnesses on this subject were true, whether John Swackhammer made inquiry of the proper parties respecting the title to the land, and how far he would have been informed of the true condition of the title had he made such inquiry. In this latter connection the testimony in regard to the lease of the land by Philip to Charles Sill becomes important, and should be carefully considered by the jury in determining what information would have been developed by inquiry. It cannot be declared as matter of law whether inquiry duly prosecuted would have resulted in information only of the lease, which would accord with the apparent title, or in knowledge of all the facts affecting the title, as testified to by the defendants and Philip Swackhammer. That would depend upon the credibility of witnesses and upon the effect to be given to whatever facts were in the case, bearing upon the determination of this question. These are matters which must be disposed of by the jury. The declarations, if any were made, by Charles Sill and Philip Swackhammer, to the effect that Philip was the owner of the land would also be appropriate matter for the consideration of the jury in deciding as to what would have been the probable results of inquiry from them in regard to the true state of the title. The learned court below charged the jury that the possession

[Brown *v.* Mattocks.]

of Mrs. Sill and her husband, and acts of ownership by them, had no effect whatever as notice to John Swackhammer of Mrs. Sill's title. The views we have expressed indicate that there was error in this, and for that reason the sixth, tenth, eleventh, twelfth and thirteenth assignments are sustained. What was said by the court as to the conveyance to Philip Swackhammer being made with intent to hinder, delay and defraud the creditors of Charles Sill we do not deem of much consequence, since all that was said would be true if there was no trust in favor of Mrs. Sill, and if there was such a trust, the case would have to be disposed of upon the considerations which affect, first, the question of its existence, and secondly, the notice of the same by which the plaintiff would be bound. That is to say, while it is true as a rule, that only such creditors as are intended to be defrauded can impeach a conveyance made in fraud of their rights, it is also true, that the conveyance as between the parties to it is good. Hence a sale by a creditor of the fraudulent grantee would pass a good title not so much because the conveyance to the latter was a fraud upon the creditors of the grantor, but because the title of the grantee was good as against him. But where the grantee is a trustee, upon a valid trust, no matter for whom, he has no title which can pass as against the cestui que trust, if the purchaser have either actual or constructive notice of the trust.

Judgment reversed and venire de novo awarded.