## Rochester Trust Co. v. White, Appellant.

Real property—Judgments—Bona fide judgment creditor—Lien of judgment—Resulting trust—Act of June 4, 1901, P. L. 425—Ejectment—Binding instructions—Remedial statutes—Construction.

1. There are three points to be considered in the construction of all remedial statutes; the old law, the mischief and the remedy; that is, how the common law stood at the making of the act; what the mischief was for which the common law did not provide; and what remedy the legislature has provided to cure this mischief; and it is the business of the courts so to construe a remedial act as to suppress the mischief and advance the remedy.

2. A bona fide judgment creditor is one who in good faith, without fraud or collusion, recovers a judgment for money honestly due him.

3. Prior to the Act of June 4, 1901, P. L. 425, providing in effect that resulting trusts of real property arising by reason of the taking of the legal title in the name of one other than the real owner shall be void and of none effect as to bona fide judgment creditors without notice, unless a declaration of trust in writing has been recorded, or unless an action of ejectment has been begun by the real owner, a judgment was a lien only upon lands actually owned by the judgment defendant and against such judgment a secret or resulting trust and an unrecorded title could prevail, however unavailing such titles might be against mortgagees of the holder of the recorded title or purchasers from him, without notice that he was not the real owner of the land. The purpose of the

act was to relieve bona fide judgment creditors from the mischief to which they had been previously unnecessarily subjected.

4. The words "without notice" in the Act of 1901, are to be construed with "judgment creditors" as well as with "mortgagees" and "purchasers" and the notice contemplated by the act is actual not constructive notice.

5. In an action of ejectment where it appeared that title to the land in suit had been taken for a bank in the name of a third person, and that a declaration of trust executed by such third person was not recorded for more than three months after its delivery; that in the interim plaintiff recovered a judgment against the holder of the legal title who after the recording of the declaration of the trust had delivered a quit-claim deed for the property on the same day, under which instruments defendant claimed, and plaintiff claimed title by virtue of a sheriff's sale upon the judgment, the court made no error in directing a verdict for plaintiff.

Argued Oct. 30, 1913. Appeal, No. 215, Oct. T., 1913, by Catherine White, from judgment of C. P. Allegheny Co., July T., 1911, No. 642, on verdict for plaintiff in case of Rochester Trust Company v. Catherine White, Lessor, and A. H. Edwards, Lessee. Before BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Ejectment for the recovery of lands in Allegheny County. Before FRAZER, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff by direction of the court for the lands described in the writ and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were answers to points, the refusal of the court to direct a verdict for defendant and to enter judgment for defendant n. o. v.

*John S. Wendt,* with him *William S. Moorhead,* for appellant.

*George H. Quaill,* with him *W. A. McConnel,* for appellee.

OPINION BY MR. JUSTICE BROWN, January 5, 1914:

The facts in this case are not in dispute.  On August 9, 1901, the Fort Pitt National Bank purchased at sheriff's sale the property over which this controversy has arisen.  At the request of the bank the sheriff's deed was made to Andrew W. Herron, who, at the time of the sale, was its cashier, but nothing appeared on the face of the deed—which was recorded September 4, 1901—to indicate that he had not purchased the property in his own right, or that he was not the absolute owner of it. On January 31, 1902, Herron executed and delivered to the bank a declaration of trust, in which he certified that he held title to the property as trustee for it.  This paper was not recorded until May 5, 1908.  In the meantime, on March 26, 1908, the appellee, the Rochester Trust Company, had recovered a judgment against Herron in one of the courts of the county.  On May 29, 1908, he executed and delivered to the Fort Pitt National Bank a quit-claim deed to the property, which was recorded on the same day.  On November 6, 1909, the bank, through its receiver, sold the property to Catherine White, one of the defendants below, having previously leased it to A. H. Edwards, the other defendant, who was in possession, under leases from the bank and Mrs. White, up to the time this action was brought.  On January 6, 1911, the property was sold by the sheriff as the property of Herron, on an execution issued upon the judgment obtained against him by the appellee on March 26, 1908.  As the purchaser at that sale it brought this ejectment, and from the judgment on the verdict directed in its favor the bank's vendee has appealed.

If, under the circumstances stated, the appellee had purchased the property prior to the passage of the Act of June 4, 1901, P. L. 425, it would have acquired nothing at the sheriff's sale.  As a judgment creditor of Her-

ron, it would have had no lien on the land, even though the recorded title was in him, for the real ownership was in another. Until the Act of 1901 was passed a judgment was a lien only upon lands actually owned by the defendant, and against it a secret or resulting trust and an unrecorded title could prevail: Sill v. Swackhammer, 103 Pa. 7. Such trusts and titles were, however, unavailing against mortgagees of the holder of the recorded title or purchasers from him, without actual or constructive notice that he was not the real owner of the land. This was the situation when the Act of June 4, 1901, was passed, and the question is as to the change which it made. It is entitled, "An act regulating trusts arising from the payment of the purchase money of land by one person, and the taking of the legal title in the name of another"; and its first section is as follows: "Whenever hereafter a resulting trust shall arise with respect to real property, by reason of the payment of the purchase money by one person, and the taking or making of the legal title in the name of another, if the person advancing the purchase money has capacity to contract, such resulting trusts shall be void and of none effect as to bona fide judgment or other creditors, or mortgagees of the holder of the legal title, or purchasers from such holder without notice, unless either (1) a declaration of trust in writing has been executed and acknowledged by the holder of the legal title, and recorded in the recorder's office of the county where the land is situated, or (2) unless an action of ejectment has been begun, in the proper county, by the person advancing the money, against the holder of the legal title."

The numerous authorities cited by counsel for appellant were not needed to show that, prior to 1901, such open and notorious possession of the premises as was held by Edwards would have been constructive notice to a mortgagee of Herron or a purchaser from him that he was not the owner of the property. The question on this appeal is not what the unwritten law was before

June 4, 1901, but what the written law became after that date.  The act of that year is a remedial one, and the cardinal rule for its construction is:  "There are three points to be considered in the construction of all remedial statutes; the old law, the mischief and the remedy: that is, how the common law stood at the making of the act; what the mischief was for which the common law did not provide; and what remedy the parliament hath provided to cure this mischief.  And it is the business of the judges so to construe the act as to suppress the mischief and advance the remedy": 1 Blackstone 87.

Taking up bona fide creditors, what was the mischief to which they were subjected before the Act of 1901 was passed?  One having lent money to another upon a judgment taken on the faith of a clear recorded title to land in the borrower would have found his judgment worthless as a lien if, after its entry, he should have been confronted with a secret or unrecorded declaration of trust or deed by his debtor to another, of which he had no knowledge, actual or constructive, at the time he lent his money.  An unknown cestui que trust might have locked in his safe or carried around in his pocket a declaration of trust and made use of it to sweep the land away from judgment creditors only after the apparent owner of it had borrowed on it all it would bear.  The manifest purpose of the Act of 1901 was to relieve bona fide judgment creditors from this mischief to which they had long been innocently subjected.  In the present case, it is not pretended that the appellee had actual notice of any kind of the trust in Herron before its judgment was entered against him on March 26, 1908.  The first notice to it that the Fort Pitt National Bank was the owner of the property was the recording of the declaration of trust on May 5, 1908; but this was more than a month after its judgment had been entered.  By that entry it had acquired whatever rights the Act of 1901 had given it, and notice to it thereafter was immaterial. A bona fide judgment creditor is one who, in good faith,

without fraud or collusion, recovers a judgment for money honestly due him, and the appellee is such a judgment creditor, entitled to protection by the Act of 1901 against a secret or resulting trust set up by the grantee of the Fort Pitt National Bank. The legislature wisely concluded that such protection was needed, and those against whom it is enforced have no ground of complaint, in view of the very simple mode prescribed by the act for their own protection. If they neither record the declarations of trust in their favor nor bring their actions of ejectment on their equitable titles, they have only themselves to blame when honest judgment creditors acquire superior rights.

It is earnestly insisted that the title of Catherine White should prevail over that of the appellee, because, at the time its judgment was entered, it could have learned upon inquiry from Edwards, the tenant in possession of the land, that Herron was not the owner of it. This, in effect, is that the appellee had constructive notice that the ownership was in another. If the words "without notice" in the Act of 1901 apply to judgment creditors, as well as to mortgagees and purchasers, it seems quite clear that the notice contemplated by the act is actual notice. The legislature must have had a purpose in including mortgagees and purchasers in the protection against resulting trusts, but if they are still to be affected by mere constructive notice, such as was given by the occupation of the land by Edwards in the present case, they are in exactly the same situation they were in before the act was passed. To so construe it would be to declare it useless legislation as to mortgagees and purchasers, and to impute to the legislature the doing of that which, under a long line of well known cases, was entirely unnecessary. This correct view of the learned president judge below was thus expressed in his opinion denying judgment for the defendants non obstante veredicto: "Was the possession of A. H. Edwards as tenant under a lease from the Fort Pitt

National Bank notice to the world of the bank's ownership? In our opinion it was not. The legislature had an object in view in passing the Act of 1901, and that object certainly was to make 'void and of non effect' secret trusts of exactly the character of the one in this case. If defendants' contention that plaintiff was bound to make inquiry of the tenant and ascertain from whom he held the property is correct, the statute would not change the existing law and was therefore useless legislation."

Judgment affirmed.