## Levy v. Hershberger, Appellant.

*Trusts—Resulting trusts—Fraud—Act of June 4, 1901, P. L. 425.*

Where in an action of ejectment for land in the possession of a bankrupt's wife, and which the bankrupt had deeded to defendant, it appeared from the facts and uncontradicted oral evidence submitted to the court that the land had been purchased with the wife's money, and that title thereto had been taken in the husband's name, that he had promised to convey to the wife but that no such conveyance was made until after plaintiff had obtained a judgment against the husband and involuntary bankruptcy proceedings had been instituted against him, the alleged trust for the wife's benefit was void under the Act of June 4, 1901, P. L. 425, and the entry of judgment for plaintiff was proper.

Argued April 13, 1915. Appeal, No. 276, Jan. T., 1914, by defendant, from judgment of C. P. Luzerne Co., Dec. T., 1913, No. 150, for plaintiff, on submission to court without a jury, in case of Benjamin Levy v. Minnie K. Hershberger. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ. Affirmed.

Ejectment to recover lands in Luzerne County.

FULLER, P. J., filed the following opinion:

This case after being duly brought to issue on abstracts and plea, has been duly submitted to the court for decision without a jury under the Act of April 22, 1874, P. L. 109.

It is an action of ejectment, begun, October 8, 1913, for a lot of land 50 feet in width by 114 feet in depth, on the northerly side of Oak street in the City of Wilkes-Barre, described in the writ and in the abstracts as two pieces, viz: (1) 40 feet in width by 114 feet in depth, comprising lot No. 198 and part of lot No. 200, on a certain plot; (2) 10 feet in width by 114 feet in depth, comprising part of lot No. 196, on said plot.

The conceded common source of title for (1) is John E. Hull, and for (2) is Firwood Land Company.

. Deeds for both were made in 1907, to Charles D. Hershberger, husband of the defendant, Minnie K. Hershberger.

The plaintiff claims title by purchase under proceeding in bankruptcy against said Charles D. Hershberger.

The defendant claims title on the proposition of a trust resulting to her through the payment of purchase-money on both pieces, accompanied by an antecedent contract on No. 1, when the deeds were made to her husband, who afterwards executed the trust by conveyance to her.

Her counsel also, by objection to testimony on the trial, seemed to take the position that the proceedings in bankruptcy were invalid by lack of jurisdiction, but this contention was not pressed upon the argument, nor in the requests, could not be sustained if it were pressed, and if it were sustained would only prolong this litigation, leading to other litigation, without being of the slightest possible ultimate benefit to the defendant.

Without any discussion, therefore, we formally overrule all of defendant's objections relating to that subject, with exception noted.

The principal oral evidence in the case was given in behalf of the defendant to establish the resulting trust and was not contradicted, but the plaintiff contends that the trust, if it existed, was void as against the creditors of the husband under the Act of June 4, 1901, P. L. 425, and so the case in the last analysis really resolves itself into the question, whether the defendant's claim to the property can be maintained against that act, and her husband's creditors.

We find as facts:

1. By written contract dated January 31, 1900, John E. Hull, then owner of piece No. 1, agreed to sell the same to the defendant, Minnie K. Hershberger, wife of

Charles D. Hershberger, for $2,785, payable in certain installments.

There was a dwelling house upon the premises in which the family at once took up their residence, and which has been her continuous residence ever since, her husband having separated from her October 19, 1912.

John E. Hull having died, his widow, Jane E. Hull, by agreement of his other heirs, acquired title, and by deed dated July 18, 1907, recorded August 31, 1907, conveyed the land of Charles D. Hershberger for the expressed consideration of $908.84, being, as therein recited, "the balance due on contract for said premises between John E. Hull, now deceased, and Minnie K. Hershberger, assigned to Charles D. Hershberger; this deed being made pursuant to terms of said agreement or contract for sale and assignment thereof; the full consideration in said agreement or contract of sale being $2,-785."

The entire consideration money on this purchase was the money of Minnie K. Hershberger, and no part of the same was the money of Charles D. Hershberger.

2. By deed dated February 21, 1907, recorded November 15, 1907, the Firwood Land Company, then owner of piece No. 2, conveyed the same to Charles D. Hershberger for $200, this adjoining strip of land being desired by Minnie K. Hershberger to make, with the other, the full width of 50 feet.

The entire consideration money on this purchase also was the money of Minnie K. Hershberger, and not of her husband, Charles D. Hershberger.

3. It is not clear from the testimony why the deeds aforesaid were made in the name of Charles D. Hershberger, when the money belonged to the wife.

The assignment from her to him of the contract recited in the Hull deed, was not proved except by the recital, and she now disclaims any knowledge of the same, but she knew how the deeds were drawn and acquiesced therein on faith of some vague sort of an oral

agreement between them that he took in trust for her and would later make deed accordingly.

After the proceedings in bankruptcy were commenced against him, he fulfilled the promise by deed to her dated July 8, 1913, recorded July 17, 1913, which recited: "This deed is made for the purpose of carrying into effect an agreement made by Charles D. Hershberger with Minnie K. Hershberger in 1907, at the time the deeds for the aforesaid property......were delivered to him, to hold temporarily only, by which agreement he was to make a deed for the same to Minnie K. Hershberger, who paid the entire purchase-money for both of the aforesaid lots of land out of her own separate personal estate. Having held the title deeds in trust for her, he now executes the trust by making and delivering this indenture to her."

No other declaration of trust was ever made, and no action of ejectment was ever begun, as provided in Act of June 4, 1901, P. L. 425.

4. Meantime, in 1911 and 1912, Charles D. Hershberger became considerably indebted, and sundry judgments aggregating $7,500, were entered against him, including one for $1,376, money borrowed from the plaintiff, who prior thereto had the record examined by an attorney, disclosing in the borrower apparent title to the land in suit, and on faith of this examination, without making any inquiry of the wife, and without actual knowledge of any trust, the plaintiff loaned the money on credit of the judgment.

5. By involuntary proceedings in bankruptcy begun, October 23, 1912, the said Charles D. Hershberger was duly adjudged a bankrupt; November 13, 1912, David Rosenthal was appointed trustee of his estate, and his lands were sold on July 26, 1913, inter alia, the land in suit to the plaintiff for $2,300, after the defendant had given notice both to the referee in bankruptcy and to bidders at the sale that she claimed the title.

The sale was duly confirmed August 9, 1913, and the

purchase-money was paid by the plaintiff, who received from the trustee delivery of deed dated August 11, 1913, being thus vested with full title to this land, unless defeated by the alleged resulting trust.

### DISCUSSION.

This brings us straight to the question which controls the case, whether the alleged resulting trust does defeat the plaintiff's claim.

We do not see how it possibly can have such an effect against the Act of June 4, 1901, P. L. 425, and the decision of the Supreme Court, January 5, 1914, in Rochester Trust Company v. White, 243 Pa. 469, construing that act. Thereby a radical change in the law applicable to the situation has been made.

It is entitled, "An act regulating trusts arising from the payment of the purchase-money of land by one person and the taking of the legal title in the name of another," and it provides:

"Section One. That whenever hereafter a resulting trust shall arise with respect to real property, by reason of the payment of the purchase-money by one person, and the taking or making of the legal title in the name of another, if the person advancing the purchase-money has capacity to contract, such resulting trusts shall be void and of none effect as to bona fide judgment or other creditors, or mortgagees of the holder of the legal title, or purchasers from such holder without notice, unless either (1) a declaration of trust in writing has been executed and acknowledged by the holder of the legal title, and recorded in the recorder's office of the county where the land is situated, or (2) unless an action of ejectment has been begun, in the proper county, by the person advancing the money, against the holder of the legal title.

"Section Two. If the person claiming to have advanced the purchase-money be a married woman and the

legal title is in her husband, she is hereby empowered
to bring an action of ejectment against him for the land
purchased with her money."

Quoting from the decision of the Supreme Court, with
change of names to fit the present case, "If under the cir-
cumstances stated the plaintiff had purchased the prop-
erty prior to the passage of the Act of June 4, 1901, P.
L. 425, he would have acquired nothing at the sheriff's
sale. As a judgment creditor of Hershberger he would
have had no lien on the land even though the recorded
title was in him, for the real ownership was in another.
Until the Act of 1901 was passed, a judgment was a lien
only upon lands actually owned by the defendant and
against it a secret or resulting trust and an unrecorded
title could prevail: Sill v. Swackhammer, 103 Pa. 7.
Such trusts and titles were, however, unavailing against
mortgagees of the holder of the recorded title or pur-
chasers from him without actual or constructive notice
that he was not the real owner of the land. This was the
situation when the Act of June 4, 1901, P. L. 425, was
passed, and the question is as to the change which it
made."

The court then proceeds to decide that a bona fide
creditor, without actual notice, having a judgment
against the holder of the legal title, should prevail
against the resulting trust of the real owner, who has not
protected his title in the manner prescribed by the act,
and it says, "A bona fide judgment creditor is one who,
in good faith, without fraud or collusion, recovers a
judgment for money honestly due him, and the plaintiff
is such a judgment creditor, entitled to protection by
the Act of 1901 against a secret or resulting trust set up
by the defendant. The legislature wisely concluded that
such protection was needed, and those against whom it
is enforced have no ground of complaint in view of the
very simple mode prescribed by the act for their own
protection. If they neither record the declarations of
trust in their favor, nor bring their actions of eject-

ment on their equitable titles, they have only themselves
to blame when honest judgment creditors acquire su-
perior rights."

The learned counsel for the defendant urges against
the application of the foregoing to the case at bar, that
the act was not passed until after the inception of defend-
ant's title to piece No. 1, by the Hull contract in 1900,
but this contention overlooks the important circum-
stance that the trust could not arise until the convey-
ance in 1907, and the act is expressly applicable "When-
ever hereafter a resulting trust shall arise," etc.

Counsel also urges that the defendant's occupancy
of the land was constructive notice of her title, but this
contention is expressly repudiated by the decision above
cited.

Again quoting with change of names, "It is earnestly
insisted that the title of the defendant should prevail
over that of the plaintiff because at the time his judg-
ment was entered he could have learned upon inquiry
from her the tenant in possession of the land, that her
husband was not the owner of it. This in effect is that
the plaintiff had constructive notice that the ownership
was in another......It seems quite clear that the notice
contemplated by the act is actual notice."

We are unable to discover any reasonable ground of
distinction which can affect the application of the act
and the decision to the case at bar.

We, therefore, state as follows our conclusions of law:

1. The facts establish in the defendant a resulting
trust as of the year 1907, valid against her husband, and
prior to the Act of June 4, 1901, P. L. 425, valid also
against his judgment creditors, with or without notice;
but

2. This resulting trust is now void under said act
against a bona fide judgment creditor without notice;
and

3. The plaintiff is such a creditor; hence

4. Judgment should be entered in favor of the plaintiff

and against the defendant for the land described in the writ.

Other facts appear in the opinion of the Supreme Court.

The case was tried without a jury and the court entered judgment for plaintiff. Defendant appealed.

*Error assigned,* among others, was the judgment of the court.

*J. Q. Creveling,* for appellant.

*Abram Salsburg,* with him *James M. Fritz,* for appellee.

PER CURIAM, May 17, 1915:

The court below found that the purchase-money for the properties which were deeded to Charles D. Hershberger, husband of the appellant, had been paid by her out of her own separate estate. She knew how the deeds had been drawn and acquiesced in them on the faith of some vague sort of an oral agreement with her husband that he held title in trust for her and would later deed the properties to her. In 1911 and 1912 he became largely indebted, and sundry judgments, aggregating $7,500, were entered against him, including one for money borrowed from the plaintiff, who, before making the loan, had the records examined by his attorney, which disclosed apparent title in the husband to the land in controversy. By involuntary proceedings in bankruptcy, instituted in October, 1912, Hershberger was adjudged a bankrupt, and in July, 1913, the property in suit was sold by his trustee in bankruptcy. It was not until after the appellee's judgment had been entered against him and the proceedings in bankruptcy had been instituted that he undertook to fulfill his promise to his wife by making a deed to her. This he did on July 8, 1913. Under the Act of June 4, 1901, P. L. 425, the alleged

trust was void as to the appellee and other judgment creditors of the husband: Rochester Trust Company v. White, 243 Pa. 469. This was the correct view of the court below, and the judgment is affirmed.