First Natl. Bank of Mt. Union *v.* Batch, Appellant.

Argued October 30, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Harry W. Petrikin,* for appellant.

*Wm. Henderson,* of *Henderson & Henderson,* for appellee.

OPINION BY TREXLER, J., January 29, 1930:

R. B. Cassady was the executor of Owen J. Cassady. He petitioned the court for permission to sell the decedent's real estate for the payment of debts. An order of sale was issued by the court, authorizing the

executor to bid at his own sale. The real estate was accordingly sold and purchased by him individually. On May 15, 1926, the orphans' court of Huntingdon County confirmed the sale, with direction to the clerk to execute and deliver the deed to the purchaser. The deed was delivered on July 9, 1926, to the purchaser who executed and delivered to himself, as executor, a bond and mortgage for the deferred purchase money. The mortgage was recorded and assigned with the bond by the executor to E. M. Greene. There was default in the payment of principal and interest and Greene entered judgment on the bond, issued a fi. fa. and the real estate was sold to the First National Bank of Mount Union, the appellee. Return of sale was made on March 12, 1928, and the deed was delivered by the sheriff to the purchaser. On October 24, 1928, the purchaser caused a summons in ejectment to be issued and the cause came to trial on February 11, 1929, and the court directed a verdict in favor of the plaintiff. The only assignment of error is the overruling by the court at the trial of the following offer of testimony on the part of the defendant. "We propose to prove by the witness that on the day of sale, which was the first day of March, 1926, that he went to R. B. Cassady, the executor of the estate of O. J. Cassady, and expressed a desire to become the purchaser of the property now involved in this action. That R. B. Cassady said to him that he would do everything that he could to secure the property for him. That it would be better, however, if he did not appear at the sale as a bidder. That he would have the property knocked down to him, R. B. Cassady, and that then he as executor of O. J. Cassady would make a return of the sale so made and would make him a deed for the property so acquired. That in pursuance to said agreement the property was knocked down for the price of nine hundred ($900)

dollars, and that on the second day of March, 1926, the day following the sale, the witness and the defendant in the case, paid R. B. Cassady nine hundred ($900) dollars and received from him a receipt dated March 2, 1926, and signed 'R. B. Cassady, executor of the last will and testament of O. J. Cassady, for the purchase money of the property.' Further, that shortly thereafter and before the date of the sheriff's sale, and before the entry of the judgment upon which the sheriff sale was had, George Batch, the defendant, entered into possession of the premises and was in possession at the time of the entry of the judgment, and at the time of the issuing of the fi. fa. upon the judgment, and at the time of the sheriff sale, and further on the day of the sale by the sheriff, at which time the First National Bank of Mount Union became the purchaser, written notice was given to the bidders that George Batch was in possession under title acquired from R. B. Cassady by the payment of the purchase money and the delivery of possession.''

There is nothing in the offer that would permit recovery by the defendant. All the proceedings were regular and were completed by the confirmation of the sale by the orphans' court and the giving of the deed by the executor, thus passing a valid title to Cassady. In reliance upon this, the purchase money was advanced to him and secured by bond and mortgage. The bond was enforced strictly according to provisions contained in it. A lawful sale was had and the sheriff's deed given and title passed to the bank. The arrangement between Cassady and Batch whereby the former received $900 was nothing but an agreement to convey in the future and could at best not bind any person except one who was privy to the contract. The agreement did not contemplate that Batch should receive title directly through the orphans' court proceedings, but Cassady, after having acquired title, should pass

it to him. In not doing so, he swindled Batch out of the money he received from him, but unfortunately, we cannot right that wrong. If a resulting trust arose by reason of the payment of the purchase money by Batch and the taking of the legal title in Cassady's name, it was void as to any purchaser or mortgagee without notice. Act of 4 June, 1901, Section 1, P. L. 425. His only claim to the property is his possession, unsupported by any legal title, and it must yield to the record title. The fact that Batch was in possession of the land avails nothing: Rochester Trust Co. v. White, 243 Pa. 469, 474.

The judgment of the lower court is affirmed.