## Chester Housing Authority *v.* Ritter et al., Appellants.

Argued January 12, 1942. Before SCHAFFER, C. J.;
MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*J. H. Ward Hinkson,* for appellants.

*E. A. Howell,* with him *Lloyd Goman,* for appellee.

OPINION BY MR. JUSTICE LINN, January 29, 1942:

This was a bill quia timet to restrain defendants from
issuing execution, etc., against certain real property.
Defendants appeal from a decree granting the prayer of
the bill.

Plaintiff purchased premises 533, 535, 537 and 539
Central Avenue in the City of Chester, by deed dated
May 11, 1940, made by the Church of God in Christ, an
unincorporated congregation; the pastor of the church
Cornelius Range, and his wife, joined as grantors.

Defendants are judgment creditors of Cornelius
Range and wife who, on November 29, 1927, gave their
bond and mortgage, secured upon premises 1709 W.
Seventh Street, in Chester, to defendants' testator. They
entered judgment on the bond on March 9, 1940, at a
time, it may be noted, when the legal title to the prop-
erty was in Range. The bill alleges that defendants
threaten execution against the property purchased by
plaintiff from the church congregation and charges that
they have no right to do so.

The record shows that in November, 1926, the church congregation, at a regular meeting, decided to purchase the Central Avenue property, the minute stating "that Cornelius Range's name be used to purchase the said property and Cornelius Range must have an agreement drawn showing he is not the owner of the property at 533, 535, 537 and 539 Central Avenue." Mr. Range testified that he was "present at the meetings" but it does not appear that he made any express agreement with respect to the property. On February 11, 1927, title was taken in his name for a money consideration paid by the congregation. On July 7, 1927, he delivered a written declaration of trust to the congregation but it was not recorded until April 8, 1940, about a month after the entry of defendants' judgment against Cornelius Range and wife. Pursuant to action taken in February, 1927, the congregation had constructed a church on lots 535 and 537 and thereafter used it as a place of worship until the sale to the plaintiff.

At the trial defendants contended, and they repeat the contention here, that as their judgment was entered before the declaration of trust was recorded and as they had no actual knowledge of the interest of the congregation, their judgment takes precedence, pursuant to the provisions of the Act of June 4, 1901, P. L. 425, 21 PS section 601, and authorizes them to proceed against the property as that of Cornelius Range.

The Act provides: "Whenever hereafter a resulting trust shall arise with respect to real property, by reason of the payment of the purchase money by one person, and the taking or making of a legal title in the name of another, if the person advancing the purchase money has the capacity to contract, such resulting trusts shall be void and of none effect as to bona fide judgment or other creditors, or mortgagees of the holder of the legal title, or purchasers from such holder without notice unless either (1) a declaration of trust in writing has been executed and acknowledged by the holder of the legal title, and recorded in the recorder's office of the county where

the land is situated, or (2) unless an action of ejectment has been begun, in the proper county, by the person advancing the money, against the holder of the legal title."

The learned court below held the Act inapplicable, as we understand it, on several grounds: (1) That there was no resulting trust because a declaration of trust was executed; (2) that "the church, being an unincorporated body, had not the 'capacity to contract' as required by the Act of 1901"; (3) that defendants were not bona fide judgment creditors without notice.

It is necessary to distinguish, in reviewing the record, between premises numbered 533 and 539 on the one hand, and, on the other, the land occupied by the church buildings. Lots 533 and 539 contained stores and apartments; the rents were collected by the secretary of the congregation. As the buildings on these premises were distinct from and not part of the church structure and were not used for congregational purposes, we shall deal first with them.

The pastor's first written agreement to hold title for the congregation is the declaration of trust executed nearly five months after he took title. If, prior to executing the declaration, he became a party to any agreement other than that imposed by equity, the evidence does not show it. A trust would result from the congregation's payment of the money for the title taken in his name, and would therefore bring the case directly within the terms of the Act of 1901. There can be no doubt whatever that the unincorporated congregation was competent to contract to buy the land and to build the church; the Act of February 6, 1731, 1 Sm. L. 192, section 2, 10 PS section 121, authorized it. See *Phipps v. Jones*, 20 Pa. 260. There is nothing in the record to show that, prior to the entry of their judgment, defendants had actual notice of the congregation's equity in premises 533 and 539, occupied by stores and apartments. The case, with respect to those lots, is directly within the statute as construed in *Rochester Trust Co. v. White*, 243 Pa. 469, 90 A. 127, and, for that reason, so much of

the decree as enjoins execution against those two properties must be reversed.

With respect to the land on which the church was constructed, a different conclusion must be reached because effect must be given to the legislation regulating the holding of title to land for church purposes. Ever since the Act of 1731 it has been held that title to land for places of worship,[1] though taken in the name of one person, will be regarded as if held in the name of the religious body for whose use it was granted. The cases on the subject are numerous, but reference to one is sufficient. In *Canovaro v. Brothers, etc., of St. Augustine,* 326 Pa. 76, 89-90, 191 A. 140, we said: "It had long been a settled rule in Pennsylvania where land is conveyed for the use of a religious society, even though the conveyance be in trust, that the transfer operates to vest absolute legal title in the congregation, subject to the limitation that the property may not be diverted from the uses for which it had been lawfully dedicated. This rule was predicated on the Act of February 6, 1731, 1 Sm. L. 192,

---

[1] The Act of June 20, 1935, P. L. 353, 10 PS section 81, now applicable [*Canovaro v. Brothers, etc., of St. Augustine,* 326 Pa. 76, 191 A. 140] provides: "Whensoever any property . . . has heretofore been or shall hereafter be . . . conveyed to any ecclesiastical corporation, bishop, ecclesiastic, or other person, for the use of any church, congregation, or religious society, for or in trust for religious worship or sepulture, or for use by said church, congregation, or religious society, for a school, educational institution, convent, rectory, parsonage, hall, auditorium, or the maintenance of any of these, the same shall be taken and held subject to the control and disposition of such officers or authorities of such church, congregation, or religious society, having a controlling power according to the rules, regulations, usages, or corporate requirements of such church, congregation or religious society, . . ."

The Act of February 6, 1731, 1 Sm. L. 192, section 2, 10 PS section 121, refers to grants of real property "to any person or persons, in trust, for sites of churches, houses of religious worship, schools, almshouses, and for burying grounds, or for any of them . . ." and provides that the lands shall be "for the sole use, benefit and behoof of the said respective societies . . .".

Sec. 2, which conferred upon religious societies the legal capacity to hold land. In *Brendle v. The German Reformed Congregation,* 33 Pa. 415, where land was conveyed to trustees, in trust for the use of a religious congregation, it was held that the congregation took a complete fee simple title. We said at pp. 424, 425: 'That act [of 1731] gave to religious societies legal capacity to hold, and therefore the conveyance to their trustees constituted an executed legal estate in the congregation itself . . . the title in their name is treated as the title of the congregation, to be used by the congregation at their discretion, for such purposes as the law allows. . . . What then is the efficacy of the declaration that the congregation holds the land for the use of its poor, for a church, and for a burial ground? Nothing, except to show that they hold it for the purposes for which the law allows congregations to hold land. Not to limit their own title, but to recognize the uses allowed by law.' " See also the Act of May 20, 1913, P. L. 242, in force at the time of the conveyance for the congregation, though since amended by the Act of June 20, 1935, P. L. 353, 10 PS section 81.

The effect of this legislation is that the purchase of this land for the church created an estate, of the character described in the quotation just made, in the Church of God in Christ for religious purposes. Accordingly, the evidence in the record that the church buildings then existed on the land at the time when this judgment was entered[2] was conclusive of the fact of actual notice to defendants of the congregation's interest. Actual notice having been found by the court below, defendants are not bona fide judgment creditors without notice, within the terms of the Act of 1901, and are therefore disqualified to issue execution against lot numbers 535 and 537 containing the church. In the Rochester case it was

---

[2] See *Beaver v. Filson,* 8 Pa. 327, and *cf. McLain v. School Directors of White Township,* 51 Pa. 196.

said that the plaintiff was not bound to inquire of the tenant occupying the premises or of his lessor, concerning the nature or extent of his ownership; such inquiry was rendered unnecessary by the provision of the Act of 1901 giving rights to judgment creditors without notice. Here, however, the defendants, when they entered judgment against Range, were faced with the physical evidence of the church itself, the ownership of which, by the church legislation referred to, had been placed in a separate class of land-holding. For these reasons, the decree restraining execution against the church premises is right.

Record remitted for appropriate modification of the decree, neither side to have costs from the other.