# Blick, Appellant *v.* Cockins.

*Trusts and trustees—Trusts ex maleficio—Fraud—Equity— Equity practice—Chancellor's findings—Weight of testimony— Decree—Appeals.* ·

1. Where a testator has been induced to make a devise by the promise of the devisee that it should be applied to the benefit of another, a trust is thereby created that may be established by parol evidence, and this is not contrary to the Statute of Wills nor within the Statute of Frauds and Perjuries. It is the element of fraud appearing in the case that gives the court jurisdiction to inquire into it, not with a view of enforcing a parol trust, but to relieve against the fraud by raising a constructive trust.

2. In a proceeding by bill in equity to have a trust ex maleficio declared in the defendant with respect to property bequeathed and devised to him by his wife, the fraud alleged being that the defendant had procured his wife to execute the will by giving her verbal assurance that he would hold the property devised to him absolutely only during his life, and would see to it that the property so obtained should be divided between the brother and sister of testatrix, the complainants in the bill, equally upon his death, and that having so obtained the property he had repudiated the obligation of his promise and proposed to hold the property as his own absolutely, where the chancellor finds as a fact the credibility of three witnesses, of whom two, the complainants in the case, testify to explicit admissions by the defendant, one that the will was executed giving to defendant absolutely the entire estate on the strength of the promise made by him to his wife that he would see that the estate would, at his death, go to her brother and sister, and the other that the absoluteness of the gift to him was only apparent, that it was only so written that he might pass it to complainants at his death, and the third, a reputable lawyer, testifies that on the occasion of the probate of the will, the defendant stated that he "held the estate in trust, a sacred trust" for complainants, and where it further appears that on the date of defendant's admissions to the complainants he executed, in the presence of one of the complainants and her husband, what purported to be a last will, written by this complainant's husband at defendant's request, giving the entire estate left defendant by his wife to the two complainants, followed, at a later date, by his assurance to one of the complainants that he had by this will— afterwards destroyed—secured to him and his sister the estate,

the chancellor commits error in refusing to decree the trust for which the bill prays.

3. Such a bill is not an attempt to reform a written instrument but an attempt to prove fraud on the part of the defendant, and for this one witness is sufficient if believed.

Mr. Justice Moschzisker dissents.

Argued Oct. 25, 1911. Appeal, No. 15, Oct. T., 1911, by plaintiffs from decree of C. P. No. 2, Allegheny Co Oct. T., 1909, No. 1139, dismissing bill in equity in case of Adelaide Miller Blick and Horace J. Miller v. James M. Cockins et al. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Bill in equity to declare a trust ex maleficio. Before SHAFER, J.

The facts appear in the opinion of the Supreme Court and in Miller v. Cockins, 231 Pa. 449.

*Error assigned* among others was decree dismissing bill.

*John S. Ferguson,* with him *Joseph N. Ulman,* for appellants.—If either before or after the making of the will, the testator makes known to the devisee his desire that the property should be disposed of in a certain legal manner, other than that mentioned in the will, and that he relies upon the devisee to carry it into effect, and the latter by any words or acts calculated to, and which he knows do in fact cause the testator to believe that the devisee fully assents thereto, and in consequence thereof, the devise is made, but after the death of the testator the devisee refuses to perform his agreement, equity will declare a trust and convert the devisee into a trustee, whether when he gave his assent he intended a fraud or not; the final refusal having the effect of consummating the fraud. Barrow v. Greenough, 3 Vesey, Jr., 152; Gilpatrick v. Glidden, 81 Me. 137 (16

Atl. Repr. 464) ; Drakeford v. Wilks, 3 Atk. 539; Mc-Cormick v. Grogan, L. R. 4 H. L. 82; Russell v. Jackson, 10 Hare 204; Wallgrave v. Tebbs, 2 K. & J., 313; Chamberlaine v. Chamberlaine, 2 Freem. 34; 2 Eq. Cas. Ab. 43; Fleetwood's Case, L. R. 15 Ch. Div. 594; Amherst College v. Ritch, 151 N. Y. 282 (45 N. E. Repr. 876) ; O'Hara v. Dudley, 95 N. Y. 403; Brown v. Lynch, 1 Paige Ch. (N. Y.) 147; DeLaurencel v. DeBoom, 48 Cal. 581; Ahrens v. Jones, 169 N. Y. 555 (62 N. E. Repr. 666); Reel v. Reel, 1 Hawks (N. C.) 248; Church v. Ruland, 64 Pa. 432; Williams v. Fitch, 18 N. Y. 546.

*Samuel S. Mehard,* with him *Harvey A. Miller,* for appellee.—When such terms as "clear, explicit, unequivocal and indubitable" are used by the courts in defining the requisite proof of a particular fact to be made out by verbal testimony, it is meant that a conviction shall be fastened in the minds of jurors as strong as verbal testimony is able to convey. It is meant that witnesses shall be found to be credible—that the facts to which they testify are distinctly remembered—that details are narrated exactly and in due order—and that their statements are true: Spencer v. Colt, 89 Pa. 314.

There is every reason for maintaining the strictness of that standard where the witnesses in question are seeking by their own testimony to get for themselves a large estate in spite of the express provisions contained in the will of the owner.

OPINION BY MR. JUSTICE STEWART, January 2, 1912:

This was a proceeding by bill in equity to have a trust ex maleficio declared in the defendant, James M. Cockins, with respect to property bequeathed and devised to him by the last will of his wife, Mariana M. Cockins, the averment being that the testatrix yielding to the persecution and studied insistence of her husband made her will devising her entire estate

to her husband, only, however, upon his promise that he would hold the property so given him for and during his life, and would see to it that at his death the property should be divided between the complainants, brother and sister of his wife of the half blood. A decree was asked requiring the defendant to perform the terms of the trust, and enjoining him from encumbering or alienating the property. The answer specifically denied any effort on the part of the defendant to influence his wife with respect to the disposition of her estate, and denied specifically that the will giving him the property absolutely had been made on any assurance or promise from him that he would hold it only for life and provide that upon his death it should go to appellants. Much besides what we have stated was alleged in the bill and denied in the answer, but the evidence in the case related solely to the one question of alleged inducement and promise on the part of the respondent. When the case came before us in 231 Pa. 449, we remanded it for fuller and more specific findings. These have now been furnished and the case is here for final determination. If the supplemental report leaves obscure some things which called for explanation, it is doubtless due to the fact that we did not clearly enough indicate the matters upon which we desired the mind of the chancellor. What these are will later on appear. The circumstances and relation of the parties to the controversy have but little bearing on the case. It is enough to state that the testatrix was a second wife of the appellee, Rev. James M. Cockins; that she was possessed of a very considerable estate, said to be of the value of $300,000, derived largely from her father, who was likewise father of the appellants by an earlier wife; that she died childless after a married life of about seven years, leaving as her closest kin the appellants. While her home was in Baltimore, she died in California while there on a visit. Her husband accompanied her remains to Pittsburgh

for interment there.  The appellants' whole case rests upon admissions and declarations alleged to have been made by the defendant with respect to his wife's will during the course of the funeral in Pittsburgh, on the evening of the same day, and on a day later in Baltimore where the will had been deposited and where it was to be probated.  The witnesses who testified to the declarations made in Pittsburgh were the appellants, Horace J. Miller, Mrs. Adelaide Miller Blick and Carrol B. Blick, husband of the latter.  The witness who testified to admissions made in Baltimore was Samuel J. Harman, Esq., a reputable member of the bar.  The material inquiry must be as to the sufficiency of the declarations and admissions made by the defendant to establish in him a trust with respect to the property given him by the will.  The chancellor fully accredits the witnesses who testify to the declarations and admissions, and notwithstanding the explicit, unqualified, and repeated denial of each and every one by the defendant, he finds that the admissions were made in entire accordance with their testimony.  He resolves it into a simple question of sufficiency of the proof.  The doctrine is too well established to call for citation of authority that where a testator has been induced to make a devise by the promise of the devisee that it should be applied to the benefit of another, a trust is thereby created that may be established by parol evidence, and that this is not contrary to the Statute of Wills nor within the Statute of Frauds and Perjuries. It is the element of fraud appearing in the case that gives the court jurisdiction to inquire into it, not with a view of enforcing a parol trust, but to relieve against the fraud by raising a constructive trust.  Now the fraud alleged here and which was the one issue to which all the testimony was directed, was that the defendant had procured his wife to execute the probated will by giving her verbal assurance that he would hold the property devised to him absolutely only during his

life, and would see to it that the property so obtained
by him should be divided between complainants equally
upon his death, and that now, having by reason of such
promise obtained the property, he repudiates the obli-
gation of his promise, and proposes to hold the prop-
erty as his own absolutely. How far do the admissions
go towards sustaining this charge? Since the credi-
bility of witnesses is a matter exclusively for the chan-
cellor, and since in this instance the chancellor has ex-
pressly indicated the witnesses whose testimony he has
accepted, our present inquiry must be confined to the
testimony of these. They are Mrs. Adelaide Blick,
Horace J. Miller and Samuel J. Harman. With re-
spect to these witnesses the learned chancellor in his
supplemental opinion says, "We are sorry to have been
thus misapprehended, and desire to say that instead of
disbelieving the testimony of Mr. Harman, who is an
entirely disinterested witness, we were and are con-
vinced that his account of the conversation testified to
by him is correct. In like manner we have relied upon
and treated as correct the testimony of Mrs. Blick, and
especially that of Horace J. Miller, as to the state-
ments made by the defendant to them in regard to his
wife's will, and notwithstanding the somewhat general
denial of the defendant, we have no doubt that his
declarations were substantially as related by these wit-
nesses." We have quoted this so that sufficient reason
may appear for our limiting our present inquiry in the
manner above indicated. We now give so much of the
testimony of each of these witnesses as bears directly
upon the point at issue. Mrs. Blick, accompanied by
her husband, came from her home in Baltimore to at-
tend the funeral of her sister, the testatrix, in Pitts-
burgh. She and her husband, with her brother Horace,
accompanied the defendant to the funeral, occupying
the same carriage. This is Mrs. Blick's testimony in
chief as to the conversation that there occurred:
"Well, we were coming I believe out of the cemetery

gate when the conversation came up, and he, defendant, spoke of the will being made and the money being left to him, and the next reference was, he followed that right up by saying, it would be all right, it was a sacred trust that Mariana had imposed upon him, and it was a beautiful trust, that she had trusted him and that he meant by Almighty God to carry it out, and he would see we children got the money at his death, and he said this two or three times in different ways, but all meaning the same thing." Speaking of a later conversation that occurred during the evening of the same day at the hotel where they were stopping, she says defendant put his arms about her and said, "Now, Adelaide, Mariana trusted me and you can trust me, and I will see not a penny of this money goes to my brothers; it will go to you and your brother Horace, and you can depend on it and I will carry it out." On cross examination referring to this later conversation she says: "Mr. Cockins said to me that I need have no worry over the estate, that it was left to him apparently in the will absolutely, but upon his promise to my sister that at his death it would go to us; it was not only a promise he made to my sister, but it was a sacred—a sacred contract he had made before God Almighty. He meant to carry it out, and he would see in the end that the money would be ours." Horace J. Miller's testimony as to the conversation when returning from the funeral was as follows: "As we were returning from the interment, and I believe just as we were coming out of the cemetery gate way, Mr. Cockins suddenly mentioned the fact that his wife had left a will and had left all the property to him, but he said 'I expect to do what is right. This is a sacred trust,' and then he immediately followed that up by saying, 'It was beautiful how my wife trusted me and I will carry this out. I will carry out her intentions.' He added some words to the effect that it was his duty so to do, and he would see that they were carried out to the

letter. My sister Adelaide made some sort of remark, "Oh, Mr. Cockins, we don't want to hear about these things just now," something like that, but he went on and told us about how his wife trusted him." Further on he says "Well, he said that this property had been left to him absolutely apparently, but that it was left for him so that he might pass it to us at his death, that this would be better—I think he used the words that we would some day feel the advantage of this provision made in this way." The conversation testified to by Samuel J. Harman occurred in Baltimore on the occasion of the probate of the will. Horace J. Miller had accompanied the others from Pittsburgh to Baltimore with a view to inquiring further as to the will. After reading the will Horace proposed to go and consult counsel. This Mr. Harman communicated to the defendant whom he found in his office on his return, "and it was then," Mr. Harman testifies, that Mr. Cockins made the remark "that it was very foolish for Horace to employ counsel, or to give him any trouble in this matter, that he held Mariana's estate—meaning his wife's—in trust, a sacred trust, for Adelaide and Horace—Adelaide being Mrs. Blick—and Horace Miller, that he intended to give it to them, but if Horace gave any trouble he was going to give Mrs. Blick her share, but Horace's share he would give to charity; he didn't intend his brothers should have any part of it, that they had enough, but that his share if he gave any trouble would be given to charity." The testimony of these witnesses having been fully accepted by the chancellor as true, it is unnecessary to indicate here how amply it was supported by the general facts of the case, especially by the circumstance that the same night that the conversation occurred in Pittsburgh, defendant in the presence of Mrs. Blick and her husband executed what purported to be a last will, written by Mr. Blick at defendant's request, giving the entire estate left him by his wife to Mrs. Blick and Horace J. Miller

absolutely. Here we have two of the only three accredited witnesses in the case testifying to explicit admissions by the defendant, one that the will was executed giving to defendant absolutely the entire estate on the strength of the promise made by him to his wife that he would see that the estate would at his death go to her brother and sister, and the other that the absoluteness of the gift to him was only apparent, that it was only so written that he might pass it to appellants at his death, and this supplemented by the testimony of Mr. Harman strongly corroborative in that the defendant there not only admitted a trust, but speaks of the shares of Mrs. Blick and Horace in the estate. Notwithstanding this accredited testimony we have this supplemental finding by the chancellor. "Ninth. The defendant did not constrain or compel his wife to execute the will in question leaving her property to him upon his verbal assurance that he would hold it only for life and see to it at his death that it should go to the plaintiffs; nor did his wife at or before the time of making her will require the defendant to make the promise alleged, nor did he obtain or procure the will to be made by making any such promise."

We remark here that it is not a question as to defendant's active interference in connection with the making of the will, whether he compelled or constrained his wife to make the will as written, or whether the wife required the defendant to make the promise alleged, for while such matters were alleged against defendant in the bill, the entire evidence was directed to the one point, which was also averred in the bill, that the will had been made on the strength of defendant's alleged promise. The sole question is, therefore, did the defendant promise his wife that if she gave him by her will an absolute estate in her property, he would claim only a life estate therein and see that her brother and sister upon his death succeeded to the estate? This is just what he did accord-

ing to the testimony of these witnesses, with no one contradicting except the defendant whose denials are rejected by the chancellor. It is difficult to see how the evidence, particularly that given by Mrs. Blick, could have been more direct and positive to the point that the will was made on the promise alleged. The other testimony was strictly corroborative and in no particular conflicting. In the leading case of Hoge v. Hoge, 1 Matts 163, a trust maleficio was declared entirely upon proof of admissions by the devisee not a particle stronger, more direct or explicit than those we have here. Defendant told Mrs. Blick that "the will left the estate to him absolutely, but upon his promise that at his death it was to go to us." He told Horace, "the property had been left to him absolutely apparently," but that it was left to him so that he might pass it to us at his death." These conversations occurred in Pittsburgh before any one saw the will or had any knowledge of its contents except the defendant who had the will in his safety box in the Fidelity Safe Deposit Company in Baltimore where it had lain for three years. He told Mr. Harman that "he held the estate in trust, a sacred trust for Adelaide and Horace" and spoke of their shares. The circumstances in connection with these admissions are in our judgment the full equivalent of another witness, the denial by the defendant, not general as stated by the chancellor, but specific and unqualified as to each admission, his eagerness the night his admissions were made in Pittsburgh to execute his trust by making a will there, in presence of Mrs. Blick and her husband, giving the estate at his death to the brother and sister, because as he said he could not sleep until he had done so, his assurance to Horace in Baltimore that he had by this will—afterwards destroyed—secured to him and his sister the estate. In a similar case, Jones v. McKee, 3 Pa. 496, Mr. Justice Burnside finds occasion to say that "the circumstances attending the case often afford the most

violent presumption of its object and truth." As much
may be said in this connection. Whether we regard
this finding by the chancellor as a finding of fact or
conclusion of law, we feel, in view of what we have
said, and in view of another finding to which we shall
refer, that it is without support in so far as it finds
that the defendant did not obtain or procure the will
to be written by making the alleged promise.

Our attention is directed to the seventh original
finding which is as follows: "We have thus stated the
substance of the testimony for the reason that the na-
ture and character of the evidence in a case of this
kind appears to be a substantive fact. We are some-
what at a loss to determine from the evidence thus
given precisely what did happen as to declarations and
writing relied upon by the plaintiff. We have no diffi-
culty, however, in finding as a fact, and we do find, that
Mr. Cockins when he told the plaintiffs of his wife mak-
ing a will of all her property in his favor, said to them
substantially that his wife had reposed great confi-
dence in him; that she had expressed to him the wish
that her next of kin got the property after his death,
and that he told her that he would see to it that they
got it, but he did not say or mean to say that the will
was made by her upon any promise or condition, but
merely that after the will was made and she had told
him of it the request and promise had been made as
stated." This finding contains the obscurity which we
had hoped would be removed by the supplemental find-
ings. Instead, it is rather increased. The obscurity is
not in the finding; that is too explicit and direct to be
misunderstood, but in the considerations which led to
its adoption. In his discussion the chancellor made no
attempt to vindicate the finding, and our examination
of the evidence discloses nothing upon which it could
rest. It was with a view of becoming better informed
as to the mind of the chancellor with respect to it, that
we directed a return of the record. The only result is

the additional finding, No. 9, which we have just dis-
cussed, and which throws no light on the earlier find-
ing. The latter was direct and explicit in finding (1)
that the defendant did make admission that his wife
had expressed to him the wish that he would see that
her next of kin got the property after his death, (2)
then he told her that he would see to it that they got
it, and (3) that the request and promise were not made
before but after the will had been executed. We have
nothing to do with what the defendant meant to say.
He does not pretend that his language was misunder-
stood, but denies unequivocally that he ever admitted
that he had ever made any promise whatever. That
he did say exactly what the chancellor finds he did not
say or mean to say is the testimony of Mrs. Blick, a
witness accredited by the chancellor and the testimony
of Horace J. Miller almost as direct. The finding is
that the wife had expressed to the defendant "the wish
that he would see that her next of kin got the property
after her death, and that he had told her that he would
see to it that they got it." Had it been found that this
admission related to a time antecedent to the execution
of the will, can it be questioned that, if believed, it
would have been entirely sufficient to establish the
trust? But the finding is that the request and promise
was made after the will had been executed. Upon
what testimony could this rest? We examined the evi-
dence when the case was here before, and we have
again examined it with greatest care without finding
anywhere any suggestion that request and promise fol-
lowed the making of the will. The defendant does not
say that they did, but denies that they were made at
—any time; and it is absolutely impossible to derive
the conclusion of the chancellor from the testimony of
the opposing witnesses each of whom testified to ad-
missions of facts which necessarily must have preceded
the actual execution of the will. It might well be
argued, in view of some of our decisions, notably Hoff-

ner's Est. Anderson's App., 161 Pa. 331, that it is immaterial whether the property has been obtained by promise made before or after the execution of the will. The chancellor took a different view. We decide nothing with respect to the question here suggested, since we find nothing in the case to support the conclusion reached by the chancellor in regard to this feature of it. While some of the admissions testified to would perhaps not be inconsistent with the view that the reference was to request and promise subsequent to the execution of the will, yet all are equally consistent with the view that they preceded the execution of the will, and the testimony of Mrs. Blick as to what defendant said, is too explicit and direct to receive any other interpretation than that which its language clearly expresses. If it be that she is the only witness who testified to an admission covering in explicit terms every requirement of the law as to the time when the promise was made, what matters it, if her testimony be true? This is not a case of attempting to reform a written instrument on the unsupported testimony of a single witness; the will operates as written, and all dispute as to it is closed. What plaintiffs here attempted was to prove fraud on the part of the defendant, and for this one witness is sufficient if believed.

The point in the case is not the number of the witnesses who testify to the defendant's admission, nor their credibility; for that is established, but whether defendant did admit that he had promised his wife that if by her will she gave him her estate absolutely he would hold it for life and see that at his death it passed to her next of kin. We have sufficiently discussed the evidence on this subject. To our mind the affirmative of this proposition was so clearly established by admittedly credible witnesses, that nothing was left the chancellor but to decree a trust as prayed for. The material findings are numbers seven and nine and these have been assigned for error. They need

not again be here recited.   For the reasons stated we think clear error has been shown in each, and that upon the evidence the plaintiffs in the bill were entitled to the relief prayed for.

We accordingly reverse the decree dismissing the bill, and direct that the bill be reinstated, the case to be proceeded with to final decree in accordance with the views here expressed.   The costs on the appeal to be paid by the appellee.

Dissenting opinion by JUSTICE MOSCHZISKER:

I would affirm upon the findings of the court below to the effect that the promise was not contemporaneous with, or did not precede or procure the making of the will.   The burden was upon the appellants to establish these facts to the satisfaction of the Chancellor, as an essential part of their case: McCloskey v. McCloskey, 205 Pa. 491.   This they failed to do.   None of the declarations of the defendant suggests that the promise induced the will; in fact, only one at all indicates a promise and that gives no particulars as to the making of the alleged bargain concerning the final disposition of the estate.   It seems to me that it would be a most dangerous precedent to permit a solemn testament to be set aside upon such incoherent emotional declarations as are testified to in this case.   To my mind the law as laid down in McCloskey v. McCloskey, supra, governs here, and thereunder no error was committed in dismissing the bill.