## A. B. Dick Company v. Third National Bank et al.

*Smith, Buchanan, Scott & Gordon,* for plaintiff.
*Moorhead & Knox,* for defendants.

ELDER W. MARSHALL, J., November 7, 1931.—The purpose of this bill in equity is to enjoin a judgment creditor of Shattuck and wife from taking in execution certain real estate standing of record in their names, but which a Federal court has adjudged they hold in trust for plaintiff corporation. The judgment creditor, being the defendant bank, has made answer, admitting the material allegations of the bill to be true, but setting up that when the judgments were obtained, record title to the realty stood in the names of Shattuck and his wife, and the bank was without notice, from the record or otherwise, of plaintiff's equitable title. To this answer, plaintiff has filed preliminary objections—in effect a demurrer—which question the sufficiency of the defense.

From the undenied averments of the bill, it appears that Shattuck had willfully infringed upon certain letters patent belonging to plaintiff; that the United States district court at Pittsburgh, on July 10, 1931, awarded to plaintiff the sum of $114,409.07 as the profits which had accrued to Shattuck by virtue of his infringement; that thereafter the Federal court determined that the real estate described in this bill had been purchased by Shattuck with moneys received by him through the infringement, and, on September 8, 1931, decreed that the equitable title thereto was in plaintiff corporation. For present purposes, we must also take as true the averments in the answer of defendant bank that it is a bona fide creditor of Mr. and Mrs. Shattuck, and that when its judgments were obtained in February and March, 1931, it had no notice, actual or constructive, of plaintiff's equitable interest in the property, there being nothing then of record to so indicate.

There is thus presented the question whether a judgment creditor is protected against a trust of which he had no notice at the time his judgment was recovered. A long line of decisions establishes, and defendant bank concedes, that the undisclosed beneficial owner takes the property clear of all judgments against the trustee: Reed's Appeal, 13 Pa. 476; Shryock *v.* Waggoner, 28 Pa. 430; Kauffman *v.* Kauffman, 266 Pa. 270; Rubinsky *v.* Kosh, Guardian, et al., 296 Pa. 285; except where the case falls within the terms of the Act of June 4, 1901, P. L. 425: Rochester Trust Co. *v.* White, 243 Pa. 469; Burns *v.* Coyne, 294 Pa. 512. Defendant contends that the statute is applicable to the situation in the present case.

The Act of June 4, 1901, P. L. 425, provides that "whenever hereafter a resulting trust shall arise with respect to real property, by reason of the payment of the purchase money by one person, and the taking or making of the legal title in the name of another . . . such resulting trusts shall be void and of none effect as to bona fide judgment or other creditors," unless a declaration of trust has been recorded or an action of ejectment begun. The term "resulting trust" has a definite significance in legal phraseology. It comprises those trusts which arise by implication of law for the purpose of carrying out the presumed intention of the parties, but the presumption that a trust was intended is always open to rebuttal: Bispham's Equity, Secs. (11th ed.) 56, 61. On the other hand, constructive trusts arise purely by construction of equity, without regard to the intent of the parties; they spring from the policy of the law which aims to prevent unfairness, bad faith or fraud, and the actual intent of the parties is necessarily immaterial. The difference between a resulting trust and a constructive trust is admirably explained by Mr. Justice Clark in McLaughlin v. Fulton, 104 Pa. 161, 170, where he says:

"A distinction is, however, to be taken between a resulting trust, properly so called, where the purchaser of lands pays the purchase-money, but takes the conveyance in the name of another, and, what is sometimes so called, when an agent holding a fund for investment purchases with that fund and takes the conveyance in his own name, as there is a very substantial difference between them both in quality and extent of the relief that can be called for. . . . In the former case, the trust results from the voluntary act of the real purchaser; in the latter it is implied from the wanton act of the merely nominal purchaser of the land, and the owner of the fund may at his election consider the purchase as made for his use."

In the case before us, the trust did not result from the voluntary payment of the purchase price by the plaintiff, but from the illegal act of Shattuck in diverting profits, wrongfully obtained by infringement of plaintiff's rights, to the purchase of property for his own benefit. In such circumstances, the law does not presume that the parties intended a trust to result, but rather, with complete indifference to what Shattuck may have intended, makes him a trustee ex maleficio, in order that he may not retain the fruits of his wrongdoing. The whole transaction was mala fide, and hence the trust arose purely by construction of law: Blick v. Cockins, 234 Pa. 261, 265; Turney v. McKown, 242 Pa. 565, 568.

Defendant argues that the case is brought within the scope of the Act of 1901 by the fact that plaintiff's money was used to purchase the property. This would be true had plaintiff voluntarily paid the money, but since the payment was a surreptitious one, without plaintiff's knowledge or consent, it cannot be supposed the parties intended a trust to be created, and, hence, the possibility of a resulting trust is precluded by the circumstances. We conclude, therefore, that the trust was constructive and not resulting, and, hence, is not covered by the Act of 1901.

But it is urged that, in view of the mischief intended to be remedied by passage of the statute, the act should be liberally interpreted, so as to apply to any secret trust, resulting or constructive, in which the purchase money has been paid by a person other than him in whose name the title is taken. This may only be done by nullifying the word "resulting" where found in the statute and which we are bound to assume was used advisedly by the legislature. A similar effort to "suppress the mischief and advance the remedy," by extending the beneficence of the statute to every class of resulting trusts, was made in Rosa v. Hummel, 252 Pa. 578, but without success. It was held that

the act could not be extended beyond its plain terms, and that relief, if any, must come from the legislature.

In our opinion, defendant's answer does not contain a sufficient defense, and the preliminary objections thereto should be sustained.

### Order

And now, to wit, November 7, 1931, plaintiff's exceptions to the answer of Third National Bank, defendant, are sustained, with leave to defendant to amend its answer within fifteen days after notice of this order, in default of which amendment a decree pro confesso shall be entered.

From William J. Aiken, Pittsburgh, Pa.