Malamed *v.* Sedelsky, Appellant.

Argued April 12, 1951. Before STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*James L. Price,* with him *Price & Propper,* for appellants.

*Foster A. Dunlap,* with him *Philip S. Polis,* for appellee.

OPINION BY MR. JUSTICE LADNER, May 21, 1951:

This is an appeal from a judgment for plaintiff entered on the pleadings in an action to quiet the title of real estate acquired at a sheriff's sale. The relevant facts are not in dispute and are as follows: Defendants, Harry Sedelsky and Selma, his wife, purchased 7224 Rutland Street, Philadelphia, which is the real estate in question, paid the down money and took title in the name of Sidney Pastner, who is Selma's brother and a veteran soldier. This was done in order that a mortgage might be secured from the Veterans' Administration. Such a mortgage in the sum of $6,800 was obtained which was executed by Sidney Pastner to whom the title was conveyed by the vendor, but all of the purchase price over and above the mortgage as well as the adjustments and expenses at settlement were paid by the Sedelskys, who entered into and remained in exclusive possession of the premises.

The deed to Sidney Pastner was dated and recorded February 24, 1947, and on June 23, 1949, Pastner executed and delivered a deed for the premises in question to the Sedelskys, but this deed was not recorded until December 16, 1949. On August 9, 1949, *after* the delivery of the deed by Pastner to the Sedelskys, but *before* it was recorded, Pastner executed a judgment note to plaintiff on which judgment was entered October 14, 1949. This was also after delivery but before the recording of Pastner's deed to the Sedelskys.

Thereafter, pursuant to execution issued on the judgment the premises were sold July 3, 1950, by the sheriff to the plaintiff the judgment creditor and the sheriff's

deed delivered in due course. There followed this action for possession and to quiet title which we now have before us.

On these undisputed facts as gleaned from the pleadings, the learned court below entered judgment for the plaintiff for the reason that the Act of June 4, 1901, P.L. 425, 21 P.S. 601, makes void a resulting trust as against judgment creditors, mortgagees or purchasers unless, inter alia, a written declaration of trust by the holder of the legal title has been recorded, citing *Rochester Trust Co. v. White*, 243 Pa. 469, 90 A. 127 (1914).

That there was a resulting trust here which arose from the payment of the purchase price by the Sedelskys is not a matter of dispute and were the Sedelskys relying on that trust for their defense the learned court below would have been correct in holding that the Act of 1901, supra, applied. However, the trust was completely executed by the delivery of the unrecorded deed by Pastner to defendants *before* the plaintiff had become a creditor of Pastner, therefore the Act of 1901 has no application. That has been definitely decided by this Court in *Beman Thomas Co. v. White*, 269 Pa. 261, 112 A. 37 (1920), where the factual situation was exactly the same as here. There, as here, a resulting trust arose because title was taken in the name of Thomas but the purchase money was paid by the Thomas Corporation. Later but *before* a judgment was entered against Thomas, the title was conveyed but the deed not recorded until *after* the judgment was entered. The lower court there fell into the same error as the court below did here and relying on the *Rochester Trust Co. v. White* case, supra,[1] found for the judgment creditor. This Court, in reversing, pointed out that the resulting trust was extinguished by

---

[1] In the case of *Rochester Trust Co. v. White*, 243 Pa. 469, 90 A. 127 (1914), no deed was ever executed and delivered by the trustee to the cestui que trust.

the delivery of the unrecorded deed. Up until that delivery the trust would have been void by reason of the Act of 1901 as to judgment creditors, etc., though good as against the trustee, but with the conveyance to the cestui que trust the trust ceased to exist and the Act of 1901 could thereafter afford no protection to creditors who acquired their rights *after* the trust ended. See also *Rosa v. Hummel,* 252 Pa. 578, 97 A. 942 (1916), which holds the Act of 1901 is strictly limited to resulting trusts.

It is true that at the time *Beman Thomas v. White,* 269 Pa. 261, 112 A. 37 (1920), was decided, judgment creditors had the protection of the recording acts only in the case of resulting trusts under the Act of 1901 and were not generally regarded as within the protection given by the recording acts to purchasers or mortgagees. The reason being that a judgment creditor stood only in the shoes of his debtor, his rights rising no higher. Hence, if his debtor was a mere trustee, the holder of the beneficial interest or a grantee under a prior unrecorded deed took priority: *Cover v. Black,* 1 Pa. 493 (1845); *Reed's Appeal,* 13 Pa. 476; *Rosa v. Hummel,* 252 Pa. 578, 97 A. 942 (1916). Though if the judgment creditor became a purchaser at the sheriff's sale under his judgment, he was then entitled to the same protection of the recording acts as any other purchaser: *Hultz v. Ackley,* 63 Pa. 142. But now by the Amending Act of June 12, 1931, P. L. 558, 21 P.S. 351, there is added to the persons protected against unrecorded deeds (i.e., subsequent purchasers or mortgagees) the "holder of any judgment, duly entered in the prothonotary's office of the county in which the lands . . . are situate." Judgment creditors since 1931 therefore have the same protection that subsequent purchasers and mortgagees have against a prior unrecorded deed, etc.

However, the recording acts as thus amended do not protect the plaintiff to any *greater* extent than they

would a purchaser or mortgagee who had actual or constructive notice of a prior unrecorded deed so we must next inquire what, if any, notice the plaintiff had of Sedelskys' ownership.

There is nothing to show that plaintiff had actual notice, but there is an averment in the New Matter part of the Answer that the defendants were in exclusive possession of the premises from February 24, 1947, when Pastner took title to the present time. Such possession by the Sedelskys was sufficient constructive notice, for it has long been settled that it is the duty of a purchaser of real property to make inquiry respecting the rights of the party in possession and failing to do so they are affected with constructive notice of such facts as would have come to his knowledge in the proper discharge of that duty: *Lazarus v. Lehigh and Wilkes-Barre Coal Co.,* 246 Pa. 178, 184, 92 A. 121 (1914); *Atlantic Refining Co. v. Wyoming Nat. Bank,* 356 Pa. 226, 236, 51 A. 2d 719 (1947); *Sidle v. Kaufman,* 345 Pa. 549 557, 29 A. 2d 77 (1942); *Kinch v. Fluke,* 311 Pa. 405, 166 A. 905 (1933)[2]. This has been the law as far back at least as *Woods v. Farmere,* 7 Watts 382, 387 (1838), where it was said by Chief Justice GIBSON, at p. 387, ". . . it certainly evinces as much carelessness to purchase without having viewed the premises, as it does to purchase without having searched the register." In that case the rule was invoked against a purchaser at a sheriff's sale which under the pleadings is the real status of the plaintiff here. But even if the plaintiff were viewed as a judgment creditor he would nevertheless in that capacity be still subject to the same duties as subsequent purchasers and mortgagees. The Act of 1931, supra, puts him in the

---

[2] It seems the rule does not apply unless the occupant claiming title is in exclusive possession: cf. *Miners Savings Bk. of Pittston v. Tracy et ux.,* 326 Pa. 367, 192 A. 246 (1937); *Salvation Army, Inc. etc. v. Lawson,* 293 Pa. 459, 463, 143 A. 113 (1928); *Schell v. Kneedler,* 359 Pa. 424, 59 A. 2d 91 (1948).

same class with them and accords him no greater rights. If then plaintiff had inquired of the defendants who were in exclusive possession by what authority they occupied the premises, he would have learned of their claim of ownership and that his judgment debtor had no title. Being bound by constructive notice therefore of the prior conveyance, his action must fail and the judgment must be reversed.

The learned court below suggested also as an additional reason for the judgment entered that by reason of the fraud perpetrated on the Government's Veterans' Administration and the Sedelskys' acts which enabled Pastner to represent himself as owner to the government agency, the equitable principle of estoppel prevents the Sedelskys from setting up their equitable title. We cannot follow this reasoning. The Sedelskys are relying on no equitable title but upon a *legal* title established by the delivery of a prior unrecorded deed. *Delivery* is all that is necessary to pass title, *recording* is only essential to protect by constructive notice any subsequent purchasers, mortgagees and new judgment creditors. Cf. *Cray's Estate*, 353 Pa. 25, 44 A. 2d 286 (1945) ; *Mower v. Mower*, 367 Pa. 325. Before there can be an estoppel there must be a showing that the plaintiff was misled or induced to lend money to Pastner by something that defendants said or did. No such circumstances appear in the record. As correctly pointed out by the learned counsel for the appellants a beneficiary is not estopped from receiving the legal title due him by the mere fact that the trustee was clothed with the indicia of title: *Berenato v. Gazzara*, 346 Pa. 568, 31 A. 2d 81 (1943).

The fraud perpetrated on the government agency we do not condone and we join the court below in its condemnation thereof. However, such imposition is probably punishable under the Federal law at the instance of the Federal authorities who have been imposed upon. But

that deception raises no element of estoppel which the *plaintiff* could set up. It is our duty to apply the rules governing the titles of real property according to the precedents that have become rules of property, and to avoid unsettling them, no matter how morally undeserving the defendants may be.

We have not omitted to consider the argument of the learned counsel of the appellee to the effect that the plaintiff as a creditor was entitled to avoid the deed of Pastner to the Sedelskys because of the Fraudulent Conveyances Act of May 21, 1921, P.L. 1045, Sec. 4, 39 P.S. 354. This section declares, "Every conveyance made. . . by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration." This provision has application only to a debtor's own property. It does not apply to the transfer to a beneficiary by a trustee of title to property he holds in trust for that beneficiary even though that trust be a resulting trust: *Burns v. Coyne*, 294 Pa. 512, 144 A. 667 (1928). We therefore find the Act of 1921 has no application to the facts of this case.

The judgment for the plaintiff is reversed.