# The Great Atlantic and Pacific Tea Company, Inc. v. Stadium Shopping Center, Inc.

*Walter L. Hill*, for plaintiff.

*Mitchell Jenkins, Henry Greenwald, Paul H. Price* and *Warren J. Kaps*, for defendant.

HOBAN, P. J., August 3, 1966.—Plaintiff pleads that Mon-Jeff Realty Co., engaged in developing a 15-acre tract of land in the Borough of Dunmore as a shopping center, constructed a store for plaintiff and leased it to plaintiff for a determinable term. The lease contained a restrictive covenant prohibiting any other lease for any portion of the property for stores which would sell at retail commodities such as were sold by plaintiff. Plaintiff occupied the building and commenced operations. Thereafter, Mon-Jeff sold the entire tract to defendant, at the same time assigning its lease, with plaintiff, to defendant. On notice of assignment, plaintiff promptly paid rent to defendant. Subsequently, defendant notified plaintiff that it intended to construct a shopping center in which would be located a Food Fair Store. Defendant is a subsidiary of Food Fair Properties, Inc., which, in turn, is an affiliate of Food Fair Stores, Inc., a well known national chain. Plaintiff asks for an injunction restraining defendant from permitting any retail food store to be established on the premises other than

plaintiff's own, and prohibiting in general any store for the retail sale of commodities dealt in by plaintiff.

Preliminary objections were filed by defendant. This court dismissed them in an opinion by Nealon, J., January 24, 1962. Defendant filed an answer, pleading as new matter that the restrictive covenant was personal to Mon-Jeff or its predecessor in title and, therefore, not binding on defendant, and that the covenant itself was so broad and unreasonable by its terms as to constitute an illegal attempt at restraint of trade, and so unenforceable. Plaintiff moved for judgment on the pleadings. This court refused, holding that some factual matter remained to be decided and that any ambiguities in the lease and the covenant were appropriate for consideration by a chancellor. See opinion, Nealon, J., October 31, 1962. After two pretrial conferences, the matter came to be heard by Hoban, P. J., chancellor.

From the pleadings, stipulations at pretrial conferences and the evidence, we make the following:

### FINDINGS OF FACT

1. The Great Atlantic and Pacific Tea Company, Inc., is a corporation of the State of Maryland and is engaged in the business of selling food at retail.

2. Stadium Shopping Center, Inc., is a Pennsylvania corporation which owns a tract of land in the Borough of Dunmore, Lackawanna County, Pa., formerly used as a baseball park.

3. Plaintiff is the lessee and occupier of a portion of the said premises, and operates thereon a retail supermarket where goods and commodities, usually and ordinarily marketed in a supermarket, are sold to the general public.

4. Plaintiff leased the premises on June 25, 1954, from Mon-Jeff Realty Company, the then owner or prospective owner of the entire tract. Plaintiff took

possession of the leased premises and opened thereon a food store on August 3, 1955, and plaintiff has occupied the premises and conducted a food store thereon ever since.

5. The lease was for a term of seven years from April 1, 1955, to March 31, 1962, with the right of the lessee to two successive five-year renewals.

6. Incorporated in the lease is the following covenant:

"The Lessor hereby agrees that he will provide parking space in the ratio of six square feet for every one square foot to be occupied by any buildings to be erected on any of the land in which the Lessor is interested which has been or is about to be purchased from Louis Baselice. And he obligates himself not to lease, rent or permit to be occupied a store wherein he is interested in which commodities such as are sold by the Lessee are sold at retail, located on any of the land purchased or about to be purchased by the Lessor from Louis Baselice (which includes the area formerly known as the Miners Ball Park, and a plot of ground across the avenue from area formerly known as Miners Ball Park), during the term of this lease or any extension thereof; and damages for the violation of this covenant are agreed to be the rent the Lessee would otherwise have to pay during the term of this lease or any extension thereof, but these liquidated damages shall not be exclusive of the Lessee's right of injunctive or other appropriate relief".

7. Plaintiff entered into the possession of the premises under the lease and expended large sums of money in establishing, opening and operating a retail food supermarket.

8. On November 13, 1956, Mon-Jeff Realty Company conveyed the entire tract to Stadium Shopping Center, Inc., by deed recorded in Lackawanna County Deed Book 540, at page 271, and on the same day as-

signed the lease between it as lessor and plaintiff as lessee to Stadium Shopping Center, Inc.

9. Plaintiff learned of the sale and assignment through written notice dated November 14, 1956, from Stadium Shopping Center, Inc., directing plaintiff to pay rent to Stadium Shopping Center, Inc.

10. On November 30, 1956, plaintiff paid its rent to defendant and notified defendant of the covenant against competition contained in the lease.

11. In January of 1961 a sign was erected on premises of defendant immediately adjacent to the portion leased by plaintiff setting forth:

"Coming Soon
Another
Food Fair
America's Show Place of Food Values"

12. On January 11, 1961, plaintiff wrote to defendant inquiring about the presence of this sign.

13. On January 30, 1961, defendant advised plaintiff that it intended to proceed immediately with the construction of a shopping center in which would be located a Food Fair Store.

14. Defendant Stadium Shopping Center, Inc., Food Fair Properties, Inc. and Food Fair Stores, Inc., are affiliated corporations.

15. Food Fair Stores, Inc., are in direct and immediate competition with plaintiff in selling food and other merchandise commonly sold in supermarkets.

The foregoing findings of fact are substantially as requested by plaintiff. In addition we find the following as requested by defendant:

16. That Mon-Jeff Realty Company acquired the said premises from Atlas Paper Box Company by deed of February 1, 1955, recorded in Lackawanna County Deed Book 525, at page 515.

17. That plaintiffs are in possession of a portion of the premises acquired by defendant as aforesaid, by

virtue of a lease with Mon-Jeff Realty Company, Inc., as lessor, when the title to the same was owned by Atlas Paper Box Company, and not by the said lessor, Mon-Jeff Realty Company.

18. That the said printed lease provided that the premises were leased "for the purpose of a general merchandise business".

## DISCUSSION

Defendant, by brief, confines its discussion to the illegal restraint of trade question. However, in its request for conclusions of law, defendant asks us to declare the covenant in dispute invalid as to it because it was personal to Mon-Jeff and, therefore, did not carry over to defendant as assignee. In his opinion, dismissing defendant's preliminary objections, Judge Nealon disposed of that matter, holding that an assignee with notice became subject to the valid incidents of the lease. Obviously, defendant had notice that A & P was on the property and operating, and it then became defendant's duty to inquire by what right plaintiff held possession of the leased premises. See Anderson v. Brinser, 129 Pa. 376; Malamed v. Sedelsky 367 Pa. 353. And whether or not a restrictive covenant runs with the land is material only on the question of notice. Even if the covenant does not run with the land the owner is bound if he took the land with notice: J. C. Grille, Inc. Liquor License Case, 181 Pa. Superior Ct. 456; Restatement, Property, §539.

Nor does the fact that A & P entered into the lease before Mon-Jeff had legal title to the property have any bearing on the matter. Plaintiff entered into possession and accepted the lease after Mon-Jeff had formally acquired title and long before defendant purchased the property.

Supermarkets operated by the great national food chains are facts of American life, and competition

among them is exceedingly keen. It appears in the testimony that there are instances in Lackawanna County where these two giants are operating rival supermarkets in adjacent areas, "back to back" or "side by side". It is obvious that in the competitive infighting A & P sought to prevent such a situation on this particular 15-acre plot; hence, as a consideration for its lease, it insisted on the restrictive covenant.

The evidence shows that 95 percent of the volume of A & P sales is in food or food products, and that the other five percent comes from a pot pourri of miscellaneous items of household and personal use, ranging from cosmetics to kitchen ware, magazines to floor wax, ladies' underwear to light bulbs, etc., etc., all displayed to catch the impulse buyer wheeling his cart with the family's grocery order. All of these items are obviously "commodities" within the generic meaning of the word. Accordingly, defendant reasons that the restrictive covenant must be so interpreted as to bar the sale of such items in any non-food store which might be established in a modern shopping center, and thus bar defendant from its intended development of the land for such purpose. Ergo, the restriction is so unreasonable as to be an illegal restraint upon the owner's free use of its land.

To back up its thesis, defendant produces the testimony of an experienced realtor and developer to the effect that the highest and best use of the land is for a shopping center, and that in his opinion the restrictive covenant would prevent the sale of competing nonfood items in any shop in the center, thus effectively knocking out development. Defendant argues that since no counter opinion was offered, the realtor's evidence is conclusive. Not so. The fact finder is not required to accept as gospel opinion evidence, even though we have a high regard for the experience and

judgment of this particular witness. Certainly, the conclusion of the witness as to the effect of the covenant is a layman's on a purely legal question.

Food Fair Stores, Inc., it is conceded, is in direct competition with A & P, and one can presume in its supermarket operations, presents in general the same line of "commodities", principally food, as does plaintiff. A modern shopping center on the other hand is a complex of establishments offering a variety of sales and services, such as department stores, specialty shops, service stations, restaurants, drug stores, liquor stores, movie theatres, shoe stores, anything, in fact, which the developers and merchants involved think can benefit from the traffic and parking facilities offered by the modern center.

From all the circumstances, I conclude that the specific and reasonable intent of the restrictive covenant was to prevent the establishment of a direct competitor engaged in the same super market business, on the property, and that plaintiff is not to be deprived of the fruit of its business foresight by an unwarranted interpretation of the restrictive covenant.

Agreements in restraint of trade limited in time or space are presumed to be valid, and the burden of showing to the contrary is on the party who so asserts, and may be enforced in equity: Seligman & Latz of Pittsburgh, Inc. v. Vernillo, 382 Pa. 161, and cases cited, particularly Holland v. Brown, 304 Pa. 545.

It is correct, as defendant argues, that such a restriction must be reasonable, and it may be considered unreasonable if it is greater than is required for the protection of the person for whose benefit the restraint is imposed: Restatement, Contracts, §515 (a). But it is also true that in interpreting contracts, the cardinal rule is to ascertain the intention of the parties, and in order to ascertain that intention, the court may take into consideration the surrounding circum-

stances, the situation of the parties, the objects they apparently have in view and the nature of the subject matter of the agreement: Betterman v. American Stores Company, 367 Pa. 193. We believe we have done just that. And as pointed out by plaintiff, it is defendant who seeks to stretch the meaning of the restriction to unreasonable lengths, not plaintiff.

We conclude that the plain and reasonable meaning of the restriction is to prevent the establishment of a competing store for the sale of food at retail on the property, and not to prevent or prohibit the sale of any other types of merchandise or services in appropriate stores.

## Conclusions of Law

1. The covenant against competition is an essential part of the consideration for which plaintiff paid and is paying and will pay during the term of the lease. The covenant, limited as it is in both time and geographical area, is valid and enforceable.

2. The lease expressly binds the parties to it and their successors and assigns. Defendant, as assignee, has all the benefits of the lease as well as all its burdens.

3. Agreements in restraint of trade, if reasonable, are valid and enforceable. Defendant, an affiliate of Food Fair, is in direct and immediate competition with plaintiff in the retail food business. As between plaintiff and defendant, the restraint imposed by this covenant is reasonable.

4. Defendant has shown no legal nor equitable right to take from plaintiff the most valuable part of the consideration provided for in the lease.

5. Plaintiff is entitled to the relief prayed for.

## Decree Nisi

Now, August 3, 1966, defendant is hereby enjoined from operating directly or indirectly, or permitting

to be operated, on the premises located in the Borough of Dunmore, Lackawanna County, Pa., as described in deed from Atlas Paper Board Company, Inc., to Mon-Jeff Realty Company, dated February 1, 1955, and recorded in Lackawanna County Deed Book 525, at page 515, any retail food store other than plaintiff's store until the termination of the lease between plaintiff and defendant and the termination of any renewal or extension thereof to which plaintiff is entitled.

This injunction to become effective on filing of a bond by plaintiff in the sum of $2,500.

Costs to be paid by defendant.

Exception if any, to be filed within 20 days, sec. reg., otherwise this decree to become final.