## Second National Bank v. Anderson

*E. Jerome Brose, of Brose, Pasevistillo, LaBarr & Jacobs,* for exceptants.

*Irving W. Coleman,* of *Coleman & Hyman,* contra.

WILLIAMS, *J.,* March 23, 1973.—This matter comes before the court on exceptions to a schedule of distribution with respect to a sheriff's sale held on September 8, 1972, in Northampton County. The facts have been stipulated by the parties.

The premises in question are located at 114 Main Street, Borough of Stockertown, Northampton County, Pa. On December 22, 1966, the property was conveyed to Mr. and Mrs. Edward Anderson by a deed which was recorded the same day. The Second National Bank of Nazareth granted a mortgage

to the Andersons in the sum of $5,500 while the Andersons' grantors provided a mortgage in the sum of $1,000. Both mortgages were recorded on December 22, 1966.

On November 11, 1967, Mrs. Anderson, after the death of her husband, sold the premises to Anne D. Roberts for a consideration of $6,500. The conveyance was by deed recorded on November 13, 1967. On November 17th of the same year, Anne D. Roberts and her husband, Norman Roberts, entered into an agreement of sale with Mr. and Mrs. Arthur Saylor, the present exceptants, to purchase the premises for $9,500. According to the terms of the agreement, $900 of the purchase price was paid on the date of the agreement while the $8,600 balance was to be paid in monthly installments over a period of 15 years. This installment agreement of sale was not recorded and Anne D. Roberts continued to appear as the record owner, although the Saylors were in possession continuously from the date of the unrecorded agreement.

On November 21, 1971, the Cement National Bank entered judgment against the Roberts on two judgment notes dated July 1, 1971, in the amount of $17,000 and October 2, 1970, in the amount of $21,000.

On August 4, 1972, Second National Bank of Nazareth the original mortgagee, entered judgment upon the bond accompanying its mortgage and issued execution against the premises. The sheriff's sale was held September 8, 1972. To protect their interest in the property, the Saylors, through their attorney, bid and purchased the property for $10,777.50. From the proceeds of sale, the sheriff's schedule proposed the following distribution:

1. Sheriff s costs, taxes, etc. $1,522.35
2. Second National Bank of Nazareth in satisfaction of first mortgage and costs 3,449.84
3. Robert Reuss and Geraldine Reuss in satisfaction of second mortgage 730.65
4. Balance to Cement National Bank 5,074.66

   Total ........................ $10,777.50

The Saylors filed an exception to the proposed distribution to Cement National Bank. It is the exceptants' contention that, inasmuch as Roberts had agreed to sell the real estate several years prior to the entry of the Cement National Bank's judgments, its lien extended only to the unpaid balance of the purchase price. At the time Cement's lien attached, the unpaid balance under the agreement of sale was $6,347.

In examining exceptants' position, we must first determine the effect of the unrecorded agreement of sale between Roberts and the Saylors. According to the recording statute: Act of May 12, 1925, P. L. 613, sec. 1, as amended, 21 P.S. §351:

"Every . . . deed, conveyance, *contract*, or other instrument of writing which shall not be acknowledged or proved and recorded . . . shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or *holder of any judgment,* duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or *constructive notice* unless such deed, conveyance, contract or instrument of writing shall be recorded . . . before . . . the entry of the judgment." (Emphasis supplied.)

By its express provisions, the recording act protects a judgment creditor against an unrecorded instrument unless he has actual or constructive notice of its existence: Malamed v. Sedelsky, 367 Pa. 353, 80 A.2d 853 (1951); Crowell v. Bell, 40 D. & C. 326 (1940). According to the stipulated facts, it is admitted that the Saylors entered into immediate possession of the premises in 1967 and have continuously occupied them. Possession by the Saylors was sufficient to provide constructive notice of the agreement of sale to Cement National Bank, a subsequent judgment creditor. It has long been held that a purchaser of real property has a duty to make inquiry with regard to the rights of the party in possession. A failure to do so will constitute constructive notice of facts that would have been discovered had the purchaser discharged his duty: Malamed v. Sedelsky, supra; Kinch v. Fluke, 311 Pa. 405, 166 Atl. 905 (1933). The fact that in the present case the judgment creditor was not the purchaser is of no consequence. Under the recording act, a judgment creditor has the same duties and rights as subsequent purchasers and mortgagees.* Malamed v. Sedelsky, supra.

The question which must be decided at this point is the effect of constructive notice upon the rights of the Cement National Bank as a lienholder. As was stated earlier, exceptants contend that the bank's judgment lien is only on the unpaid purchase price at the time the lien attached, which was approxi-

---

* The rule that possession creates a duty of inquiry and, therefore, constitutes constructive notice does not apply unless the occupant claiming title is in exclusive possession. See Miners Savings Bank of Pittston v. Tracy, 326 Pa. 367, 192 Atl. 246 (1937), appeal dismissed, 302 U.S. 651, 58 S.Ct. 272, 82 L.Ed. 504 (1937).

mately $6,347. The Cement National Bank agrees with this point of law, as does the court. A judgment against a vendor of land under an agreement of sale binds his legal estate as well as his beneficial interest, an interest in the amount of the unpaid purchase price: Burke v. Kerr, 142 Pa. Superior Ct. 37, 15 A.2d 685 (1940); McClerry v. Stoup, 32 Pa. Superior Ct. 42 (1906). Since the Cement National Bank is charged with constructive notice of the agreement of sale, its lien could attach only to the unpaid purchase price of the property inasmuch as the agreement is valid as to the bank.

Exceptants' theory is that on November 12, 1971, the date Cement National Bank's notes were filed, the Saylors were entitled to receive unencumbered title from Roberts upon payment of $6,347, the balance due under the agreement of sale. It is their theory that after payment of sheriff's costs and mortgage indebtedness from this figure, the remaining balance of $644 represents the net amount subject to Cement National Bank's lien. We disagree. To accept this argument would be to hold that the payment of the two mortgage liens must be confined to the unpaid purchase price instead of the entire proceeds of the sale. The mortgage liens are unaffected by the subsequent agreement of sale. It is only Cement National Bank's lien which cannot exceed the equitable interest of Roberts.

Accordingly, there appears to be no error in the sheriff's schedule of distribution. First, the costs are to be paid from the proceeds of the sale: Wickersham v. Fetrow, 5 Pa. [Barr's] 260 (1847). This amounted to $1,522.35 and reduced the proceeds to $9,255.15. From this amount, the mortgage indebtedness was paid a sum of $4,180.49, leaving a balance of $5,074.66 to be distributed to the next lienholder, Cement National Bank. Since it has

been established that the bank had a lienable interest only to the extent of the unpaid purchase price, $6,347, and the balance of the proceeds was considerably less than this figure, the balance was properly paid to the Cement National Bank.

For the above reasons, we enter the following

## ORDER

And now, March 23, 1973, exceptants' exceptions to the sheriff's schedule of distribution are denied and dismissed.